#### UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF NEBRASKA
#### LINCOLN DIVISION

| | |
|---|---|
| ALMA, et al., | ) |
|     *Plaintiffs*, | ) Case No.: 4:20-cv-03141 |
| v. | ) **PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT'S OBJECTIONS TO PLAINTIFFS' EVIDENCE** |
| NOAH'S ARK PROCESSORS, LLC, | ) |
|     *Defendant*. | ) |

Defendant has now filed three separate motions—53 pages and counting—raising over a hundred evidentiary objections and seeking to exclude nearly every piece of evidence Plaintiffs have submitted in support of their preliminary injunction motion. *See* Dkt. 26 (motion to strike ("MTS")); Dkts. 44, 45 (brief and objections, withdrawing motion to strike); Dkt. 48 (objections to reply evidence). As Plaintiffs have explained, these objections should be rejected wholesale, both because preliminary injunction evidence need not comply with the rules applicable at trial, and because the vast majority of the objections are too cursory and unexplained to merit consideration. Dkt. 41 (MTS Opp.). Plaintiffs will not repeat those arguments here. This brief responds to the new arguments Defendant has raised in its new motions filed after the preliminary injunction was "deemed submitted" by the Court. Dkt. 30 (Dec. 22, 2020 Order).

**I.  The Objections Should Be Rejected Wholesale.**

    **A.** The plant's new evidentiary objections (Dkts. 44, 45, 48) largely repeat the same laundry list of arguments made in its now-abandoned motion to strike (Dkt. 26). As Plaintiffs explained in response to that motion, Defendant's technical and largely unexplained evidentiary objections have no place here. MTS Opp. 2-3. Because preliminary injunctions must be decided

1

quickly to prevent irreparable harm, the Supreme Court has explained that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, multiple courts in the Eighth Circuit, and at least eight different Circuits—every single one to consider the issue—have held that preliminary injunction evidence need not satisfy the strictures of the Federal Rules of Evidence. MTS Opp. 2-3; *see Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010) (collecting cases and explaining that any other rule "would undermine the ability of courts to provide timely provisional relief"). Defendant identifies no case to the contrary. *See* Dkt. 45 at 2-3 & n.9.

Defendant's only argument in response is that the District of Nebraska's Local Rules somehow cancel this universal rule, Dkt. 45 at 2-3—even though no court has ever agreed. *See, e.g.*, *Phelps-Roper v. Heineman*, 2010 WL 2015269, at *1 (D. Neb. May 19, 2010) (applying the consensus rule). Defendant cites Local Civil Rule 7.1(a)(2)(C), but that rule merely requires that documents offered as evidence be authenticated by affidavit. It states that "[a]n affidavit must identify and *authenticate any documents* offered as evidence," and that the authenticating "affidavit must be made on personal knowledge [and] set forth facts that would be admissible in evidence." NECivR 7.1(a)(2)(C) (emphasis added). Nothing in the rule speaks to affidavits or declarations offered as testimony, and certainly nothing purports to reverse the consensus rule that TROs and preliminary injunctions be decided quickly without the need for admissible trial evidence. Courts have accordingly interpreted the rule to simply "require that documents used as evidence to support or oppose a motion must be authenticated by affidavit." *PW Eagle, Inc. v. Schnase*, 376 F. Supp. 2d 945, 946 (D. Neb. 2005); *see, e.g.*, *Trice v. Frakes*, 2020 WL 7075595, at *3 (D. Neb. Dec. 3, 2020) (same); *Carlson v. Freightliner LLC*, No. 4:03CV3208, 2005 WL

8176081, at *6 (D. Neb. Jan. 27, 2005) (same). In compliance with Rule 7.1(a)(2)(C), Plaintiffs have provided authenticating declarations for their documentary evidence, just as Defendant has. *See* Dkt. 19-1 (authenticating based on personal knowledge); Dkt. 34-17 ¶ 9, 14, 15 (same).

**B.** As Plaintiffs have explained, Defendant's objections can also be rejected for being too cursory. MTS Opp. 3-4. Defendant's sole response is that arguments only require elaboration on appeal, and that literally no explanation is required for Defendant to raise its dozens and dozens of claims here. Dkt. 45 at 5 ("Noah's citation to an evidentiary rule is sufficient . . . ."). That position is hard to believe. If it were correct, then just by *citing* evidentiary rules and quoting entire declarations as Defendant has done, *see, e.g.*, Dkt. 45 at 8-12 & nn.6-9, it could force the Court and the Plaintiffs to piece together which objections could apply to which statements, what arguments might support those objections, and then respond to those hypothetical arguments that Defendant has declined to explain. That is not the law. District courts summarily reject underexplained arguments all the time. *See, e.g.*, *United States v. Lagunes*, 2012 WL 6727542, *4 (N.D. Ind. Dec. 28, 2012); *Mt. Hawley Ins. Co. v. Adell Plastics, Inc.*, 348 F. Supp. 3d 458, 464-65 (D. Md. 2018); *Hensley v. Berryhill*, 2019 WL 7662385, *2 (W.D. Ky. Sept. 17, 2019); *Schultz v. City of Hapeville*, 2010 WL 11493296, *7 (N.D. Ga. Jan. 15, 2010).

It is especially important to reject Defendant's cursory objections here, where the slightest consideration reveals most of them to be utterly baseless. *See, e.g.*, Dkt. 44 at 14 (asserting without explanation that photographs of crowding at Noah's Ark are not relevant to the crowding Plaintiffs assert); *id.* at 8-12 & nn.6-9 (asserting without explanation that Plaintiffs lack personal knowledge of conditions that they personally observed); *id.* (asserting without explanation that conditions Plaintiffs personally observed, uninterrupted, for eight months of the pandemic are not relevant to whether those conditions existed a month or two later); FRE 401 (evidence is relevant if it has

3

"*any* tendency to make" a material fact more probable); *id.* at 14-15 (objection to expert declarations as improper lay opinion); *id.* at 16-17 (asserting that conditions and policies personally observed at numerous other plants are not based on personal knowledge); *id.* at 7 (objecting to the same type of authenticated documents that Noah's Ark has itself offered and relied on), *compare* Dkt. 34-17, Exs. Defendant cannot force the Court and the Plaintiffs to sift through its hundreds of objections in search of plausible ones to evaluate.

Defendants' objections are notable in that they seek to exclude evidence that Defendant was not able to genuinely dispute in the preliminary injunction motion now under submission—namely, that serious crowding persists at Noah's Ark and has throughout the pandemic, that the plant has not conducted any testing or contact tracing, that it has not written any sick-leave policy and has done almost nothing to convey the availability of paid sick leave to workers, that workers have regularly been forced to lower their dirty masks, that other plants are providing the protections Plaintiffs seek, and that these protections are essential to prevent another surge. PI Reply, Dkt. 40, at 5-13; *see also* Dkt. 45 at 6 (suggesting plant still has not implemented plans it supposedly adopted after this lawsuit); Dkt. 48 at 2 n.2 (suggesting no sick-leave notice as of the "Fall"—i.e. more than 6 months into the pandemic). In other words, the plant seeks to exclude on purely technical grounds what it cannot deny is true.

Defendant's ever-growing list of objections should not delay the resolution of Plaintiffs' motion, which seeks to prevent urgent harm to the Tri-Cities community. Courts could never decide TROs or preliminary injunctions quickly enough to prevent imminent harm if defendants could hold up the process with kitchen-sink motions like Noah's Ark's.

4

## II.     The Reply Declarations Are Proper.

Defendant's most recent set of objections to Plaintiffs' reply declarations (Dkt. 48) include the same kitchen-sink list as the other filings. They should be rejected wholesale for the reasons stated above and in the MTS opposition. Plaintiffs will briefly address several of the filing's contentions.

First, Defendant claims that Plaintiffs' testimony about the emotional distress they would suffer from another outbreak at Noah's Ark "constitutes improper rebuttal" because it does not respond to Noah's Ark's opposition. Dkt. 48 at 2, 3, 4. But Defendant's opposition argued that Plaintiffs would not experience any unique harms stemming from their connection to the plant. PI Opp., Dkt. 33, at 14-19. Plaintiffs' testimony responds directly to that defense. *See* PI Reply 18; *Premachandra v. United States*, 101 F.3d 68, 69 (8th Cir. 1996) ("new evidence" proper on reply when it responds to defenses raised in an opposition); *CitiMortgage, Inc. v. Royal Pac. Funding Corp.*, 2017 WL 3116135, *6 (E.D. Mis. July 21, 2017) (same); *Atuahene v. S.D. State Univ.*, 2009 WL 1586952, *8 (D.S.D. June 4, 2009) (same). In any event, Plaintiffs face multiple special injuries, any one of which is sufficient for their nuisance claim. PI Reply 17-18.

Second, Defendant questions the relevance of Plaintiffs' evidence showing a lack of testing at the local health department. Dkt. 48 at 4-5. But that evidence directly responds to the plant's statement (without elaboration or documentation) that "[t]he Health Department provides free testing in Hastings," PI Opp. 10—a statement the Health Department itself denies. Its website offers no testing and instead directs users elsewhere to seek testing; and its employee confirmed the same over the phone. PI Reply 9. Contrary to Defendant's objection, Dkt. 48 at 4, it is "relevan[t]" context that the plant does not even know what testing is available in the community

5

when it sends sick workers to find testing on their own. But most importantly, the plant admits that it has conducted no testing or tracing, and that it never plans to conduct screening tests.

Third, Defendant remarkably asserts that Michael Felsen's *40 years* litigating OSHA enforcement actions do not make him qualified to explain the general procedures and timelines for OSHA's abatement orders to take effect. Dkt. 48 at 5-7. This kind of argument shows why Defendant's objections are not worthy of serious consideration. Defendant suggests that, "since 2018" when Mr. Felsen retired, the process for appealing abatement orders might have changed. *Id.* at 6. But Defendant identifies no "events occurring after his retirement" (*id.*) that change the appeal process (which is set by statute), or that cast any doubt on his explanation that an OSHA abatement order would not take effect for *years* if Defendant appealed it.

Dated: January 8, 2021

Adam Sipple (SBN 20557)
Rose Godinez (SBN 25925)
ACLU Foundation of Nebraska, Inc.
134 S. 13th St. #1010
Lincoln, NE 68508
T: (402) 476-8091
*ajsipple@aclunebraska.org*
*rgodinez@aclunebraska.org*

Maren Lynn Chaloupka (SBN 20864)
Chaloupka Law LLC
P.O. Box 1724
Scottsbluff, NE 69363
T: (308) 270-5091
F: (308) 270-5105
*mlc@chaloupkalaw.net*


*Attorneys for Plaintiffs*
*\*Admitted Pro Hac Vice*

Respectfully submitted,

/s/ Spencer Amdur
Spencer Amdur*
Julie Veroff*
ACLU Foundation
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
*samdur@aclu.org*
*jveroff@aclu.org*

Lee Gelernt*
Noor Zafar*
ACLU Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*nzafar@aclu.org*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the type-volume limitation of NECivR 7.1(d) because it contains 1,651 words. I certify that I relied on Microsoft Word 2019 word count function, which included all text including the caption, headings, footnotes, and quotations.

/s/ Spencer Amdur
Spencer Amdur


**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2021, I electronically filed the foregoing with the Clerk of Court by using the District Court CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ Spencer Amdur
Spencer Amdur