IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
LINCOLN DIVISION

| | | |
|---|---|---|
| ALMA; ISABEL; ANTONIO; AND DANIEL J. LEONARD, | ) | CASE NO.: 4:20-CV-03141-JMG-CRZ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **NOAH'S BRIEF IN SUPPORT OF** |
| vs. | ) | **RULE 12(b)(1) AND 12(b)(6) MOTION** |
| | ) | **TO DISMISS** |
| Noah's Ark Processor, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

This matter is before the Court upon the Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (the "Motion"; Filing No. 50)[1] filed by Defendant Noah's Ark Processor, LLC ("Noah's"), the operator of a meat packing plant in Hastings, Nebraska. Complaint, ¶4.   Plaintiffs are 3 former employees of Noah's, who are proceeding pseudonymously (collectively the "Doe Plaintiffs"), and Daniel J. Leonard ("Leonard"), a local Doctor, who owns a medical practice and works at a hospital. Complaint ¶¶16, 17, 18, 19, and 89.   Plaintiffs filed a 3 Count Complaint asserting purported private causes of action against Noah's for:

    i)      public nuisance arising out of Noah's alleged operation of its meat packing plant in a manner that increases the  risk of  COVID - 19  infection to  its workers, thereby creating an  increased risk of COVID infection to the community at large;

    ii)     breach of the duty to provide a safe workplace (negligence) to its workers by failing to implement basic and critical protections against COVID-19;[2]  and

    iii)    violation of §5103 of the Families First Coronavirus Response Act (the "Act"), which requires an employer to post a  notice approved by the Department of Labor that notifies its employees of the sick leave provisions of the Act.

---

[1]Available at: https://ecf.ned.uscourts.gov/doc1/11314626806.                                     .
[2]We will refer to this breach of duty to provide a safe workplace claim (negligence) as the "safe workplace claim."

The Motion seeks dismissal of the Complaint for lack of subject-matter jurisdiction, because the injury that Plaintiffs aver is not particularized to Plaintiffs,  not concrete, not actual, and not threatened.  Plaintiffs accordingly lack standing.  The Motion also seeks dismissal on the basis the Complaint fails to state a claim for relief because:

i)    the Complaint states no facts establishing that Plaintiffs have suffered special injury traceable to Noah's alleged acts and omissions that is different in kind from the injury suffered by the public as a result of Noah's supposed public nuisance;

ii)   the Complaint states no facts establishing that Noah's is engaging in conduct that would  constitute a common law public nuisance, there being no allegation of criminal conduct on Noah's part;

iii)  this Court should dismiss Plaintiffs' public nuisance claim under the doctrine of primary jurisdiction;

iv)   the Complaint alleges no damage resulting from Noah's alleged negligent failure to provide a safe workplace, which is required by Nebraska law to state a safe workplace claim sounding in negligence;

v)    the  Complaint fails to state Plaintiffs are current employees of Noah's, which is required by Nebraska law to state a safe workplace claim sounding in negligence; and

vi)   the Families First Coronavirus Relief Act (the "Act") creates no private cause of action for violation of the notice provision of the Act.

Plaintiffs purport to assert the rights or legal interests *of others* to obtain relief *for themselves* for *future* harm they speculate *might* befall them that they allege is traceable to Noah's *non-criminal* conduct *during a pandemic*.  These specious claims face insurmountable obstacles.

Plaintiffs lack standing to assert all three purported claims.  They allege no personal, particularized, concrete, actual or imminent injury to themselves and assert rights of third parties that they have no right to assert.  Plaintiffs have no personal stake in the alleged dispute, for the relief they seek for themselves is identical to the relief sought for the community at large.

Plaintiffs have no private cause of action to make claim for common law public nuisance

2

for two reasons. Plaintiffs allege no special injury as required by Nebraska law to privately assert such a claim; and the Complaint alleges no acts or omissions on Noah's part that constitute a common law crime that would give rise to a common law public nuisance. Furthermore, Plaintiffs' public nuisance claims should be handled by pertinent governmental officials who have the requisite expertise rather than this Court, pursuant to the doctrine of primary jurisdiction.

Plaintiffs have neither a safe workplace claim under Nebraska law nor a claim for violation of the *employee* notice provision of the Act for the obvious reason that they are not employees of Noah's. Furthermore, the Act creates no private cause of action for violation of §5103 of the Act.[3]

This Court should summarily dismiss Plaintiffs' Complaint with prejudice at Plaintiffs' cost.

**STANDARD OF REVIEW**

A Motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP") challenges the subject matter jurisdiction of a court. The party claiming subject matter exists bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA,* 615 F.3d 985, 988 (8th Cir. 2010). This Court recently summarized the standard of review for Rule 12(b)(1) motions *in eScholar LLC*

---

[3]§5103 of the Act states:

   **SEC. 5103. NOTICE.**

   (a) IN GENERAL.—Each employer shall post and keep posted, in conspicuous places on the premises of the employer where notices to employees are customarily posted, a notice, to be prepared or approved by the Secretary of Labor, of the requirements described in this Act.

   (b) MODEL NOTICE.—Not later than 7 days after the date of enactment of this Act, the Secretary of Labor shall make publicly available a model of a notice that meets the requirements of subsection (a).

This provision is explained at 29 C.F.R. §826.80. The Act creates no private cause of action for violation of this provision.

*v. Nebraska Department of Education*, Case No. 8:20-CV-135 (October 28, 2020), thus providing

a good place for us to start here:

> Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter,* 516 F.3d 709, 712 (8th Cir. 2008). A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack" and a "factual attack." *Branson Label, Inc. v. City of Branson, Mo.,* 793 F.3d 910, 914 (8th Cir. 2015). In a facial attack, the Court merely needs to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id*. Accordingly, the Court restricts itself to the face of the pleadings and the nonmoving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). *Id*.; *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008). Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, may be considered. *Branson Label,* 793 F.3d at 914.

The instant Motion asserts a facial attack on the Complaint, and so the principles of review

applicable to a Rule 12(b)(6) motion apply to Noah's FRCP 12(b)(1) Motion.

The standard of review for a FRCP 12(b)(6) motion (and the FRCP 12(b)(1) Motion in

this case) was well summarized by this Court just last week in *Zeb v. Benes*, Case No. 4:20-CV-

3075 (January 6, 2021) where this Court observed:

> I. STANDARD OF REVIEW

> To survive a Rule 12(b)(6) motion to dismiss, a complaint  must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P.8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> For the purposes of a motion to dismiss a court must take all the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. See *Twombly*, 550 U.S. at 545.

Although when deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is normally

limited to considering the facts alleged in the complaint, the Court may consider "matters of which

judicial notice may be taken," pursuant to FRE 201. *Brass v. American Film Technologies, Inc.,*

987 F.2d 142, 150 (2nd Cir. 1993); *Meyers v. PNC Financial Services Group, Inc.,* 3:19-cv-01892 (VAB) (December 23, 2020).

## STATEMENT OF FACTS

Plaintiffs' First Claim for Relief for public nuisance states that "Noah's Ark's failure to implement the most basic and essential COVID-19 protections [relating to face masks, testing, social distancing, and sick leave during the COVID-19 pandemic] has caused and is reasonably certain to cause the transmission of COVID-19 both inside and outside the plant" and that "[t]his transmission has caused and will cause widespread disease, hospitalizations, and death, not only among Noah's Ark workers, but also their family members, the people they live and socialize with, and members of the public with whom they interact." Complaint at ¶¶102 and 103. Plaintiffs next allege in conclusory manner that "Noah's Ark's policies and practices [relating to the COVID-19 pandemic] constitute a public nuisance" and ". . . substantially and unreasonably interfere with the common public right to public health and safety, because they create a substantially heightened risk of spreading a deadly virus." Complaint ¶104. Plaintiffs contend that "[a]bsent prompt and immediate injunctive relief, Plaintiffs face a significant and unique risk of irreparable harm in the form of physical, emotional, and economic injuries" and that Noah's "ongoing conduct is a direct and proximate cause of Plaintiffs' injuries and threatened injuries." Complaint ¶¶105 and 106. Plaintiffs "request a declaration that Noah's Ark's policies and practices constitute a public nuisance, and they request injunctive relief to abate the nuisance." Complaint ¶¶108. Plaintiffs make no claim for damages for any past conduct on Noah's part and claim no injury traceable to Noah's acts and omissions that is different from the injury that the community at large around Noah's Plant *may* suffer, assuming as we must for the purposes of this Motion that the allegations of the Complaint are true.

Plaintiffs' Second Claim for Relief alleging the workplace safety claim charges that

5

"Noah's Ark has a duty to furnish *its employees* with a reasonably safe place in which to work [italics supplied for emphasis]" and "Noah's Ark voluntarily assumed this duty of care." Complaint at ¶110.  Plaintiffs next state that "[b]y failing to implement basic and critical protections against COVID-19, Noah's Ark breached and continues to breach this duty." Complaint at ¶111.  Although Plaintiffs allege that "Noah's Ark's breach of its duty has caused harm to Plaintiffs, who have suffered physical harm associated with COVID-19 infection, emotional harm, and in some cases monetary harm" in the past, they make no claim for damages for these alleged past injuries.[4]   Complaint at ¶114.  Instead, Plaintiffs plead that they "are likely to experience future harm if Noah's Ark does not immediately satisfy its duty to provide a reasonably safe workplace . . . request a declaration that Noah's Ark has breached and is breaching this duty, and . . . request injunctive relief to ameliorate the breach." Complaint at ¶¶113 and 114. Plaintiffs state no facts establishing the nature of the future harm they fear that they will experience as a result of Noah's failure to provide a safe work *to its employees*.

Plaintiffs' Third Claim for Relief for violation of the Act's notice requirement codified at §5103 of the Act posits that "Noah's Ark has not posted any notice about the Act, including its requirements or the procedures for filing complaints for violations of the Act" and "Noah's Ark is in violation of the . . . Act's notice requirement." Complaint at ¶¶116 and 117. Plaintiffs then aver that Noah's "violation has interfered *with workers' ability* to exercise their rights to paid sick leave under the Act [italics supplied for emphasis]" and "request a declaration that Noah's Ark is in violation of the  . . . Act and an injunction ordering it to comply with the Act's requirements." Complaint at ¶117 and 118.  Plaintiffs state no facts establishing how they, as Noah's ex-

---

[4]Nor could the Doe Plaintiffs state a claim for damages (or injunction) for personal injuries arising out of their past employment with Noah's, because of the bar of the exclusivity provisions of the Nebraska Workers Compensation Act, codified at Neb. Rev. Stat. §§48-111 and 48-148.

employees or as a local physician, suffered any injury from Noah's alleged violation of the Act.

## ARGUMENT

### I.   GENERAL DISCUSSION OF THE LAW OF STANDING.

Federal courts are not courts of general jurisdiction and accordingly only have the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto. *Bender v. Williamsport Area School* District. 475 U.S. 534, 541, 106 S. Ct. 1326 (1986). Article III, § 2, of the Constitution, confers subject matter jurisdiction over a dispute only if it is a "case" or "controversy." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016);[5] *Raines v. Byrd,* 521 U.S. 811, 818, 117 S. Ct. 2312 (1997).

Although some of the elements of the case and controversy requirement express merely prudential considerations that are part of judicial self-government, standing is an essential, unchanging, and core component of the Article III case and controversy requirement. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S. Ct. 2130 (1992). The doctrine of standing sets "apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III." *Id.* It serves "to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S. Ct. 1717, 1722 (1990). The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S. Ct. 1138 (2013). Before a federal court can consider the merits of a legal

---

[5]The *Spokeo* Court explained:

> Although the Constitution does not fully explain what is meant by "[t]he judicial Power of the United States," Art. III, § 1, it does specify that this power extends only to "Cases" and "Controversies," Art. III, § 2. And " '[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.' " *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L.Ed.2d 849 (1997).

claim, the person seeking to invoke the jurisdiction of the court bears the burden to prove the requisite standing to sue. *Whitmore* at: 495 U.S. 154, 110 S. Ct. 1722; *Lujan, supra* at: 504 U.S. 561.

Standing focuses on whether the plaintiff is the correct party to assert the claims at issue in the suit. *Raines, supra.* To meet the standing requirements of Article III, "[a] plaintiff must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. [emphasis in the original]" *Allen v. Wright,* 468 U.S. 737, 751 (1984). The *Raines* Court stressed that the italicized words, *personal injury,* in this quotation from *Allen v. Wright* "are the key ones." *Raines* at: 521 U.S. 818. Indeed, the Supreme Court has "consistently stressed that a plaintiff's complaint must establish that he has a "personal stake" in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Raines supra* at 521 U.S. 819. Particularized in this context means "that the injury must affect the plaintiff in a personal and individual way.' *Lujan*, *supra,* at: 504 U.S. 560-561, and n. 1. *Bender v. Williamsport Area School Dist*., 475 U.S. 534, 543-544 (1986) (school board member having "no personal stake in the outcome of the litigation" lacks standing); *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 39 (1976) (*Saying*: "The necessity that the plaintiff who seeks to invoke judicial power stand to profit in some personal interest remains an Art. III requirement.").

The *Spokeo* Court summarized the irreducible, constitutionally[6] required elements of standing that a plaintiff bears the burden to plead and prove as follows:

---

[6] The *Spokeo* Court observed: "Injury in fact is a constitutional requirement, and "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."). *See also*: *Gladstone, Realtors* v. *Village of Bellwood,* 441 U. S. 91, 100 (1979) (*Saying*: "In no event ... may Congress abrogate the Art. III minima"). This explains why the requirements for third party standing later discussed requires the Plaintiff asserting third party rights to prove his own injury in fact in addition to a "close relationship" with the third party having the rights and the third party's hindrance in asserting those rights.

Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements. *Lujan*, 504 U.S. , at 560, 112 S. Ct. 2130, 119 L.Ed.2d 351. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. [Foonotes and citations omitted].

*Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016). "In plainer language," a plaintiff must show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it. *Muransky v. Godiva Chocolal'ier, Inc*., Nos. 16-16486 & 16-16783 (11th Cir. October 28, 2020). *Spokeo* further teaches that "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete[7] and particularized'[8] and 'actual or imminent,[9] not conjectural or hypothetical.' *Lujan*, 504 U.S. at 560, 112 S. Ct. 2130, 119 L.Ed.2d 351 (internal quotation marks omitted). [Footnotes from original omitted and Footnotes added]." *Spokeo, Inc. supra* at: 136 S. Ct. 1548.

---

[7]The *Spokeo* Court explained the concreteness requirement of injury in fact as follows [Footnotes omitted]:

> A "concrete" injury must be "de facto"; that is, it must actually exist. See Black's Law Dictionary 479 (9th ed. 2009). When we have used the adjective "concrete," we have meant to convey the usual meaning of the term – "real," and not "abstract." Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967). Concreteness, therefore, is quite different from particularization.

*Spokeo, supra* at: 136 S. Ct. 1548.

[8] The *Spokeo* Court explained the particularized requirement of injury in fact as follows [Footnotes omitted]:

> For an injury to be "particularized," it " must affect the plaintiff in a personal and individual way." *Ibid.*, n. 1, 112 S. Ct. 2130, 119 L.Ed.2d 351; see also, e.g., *Cuno, supra*, at 342, 126 S. Ct. 1854, 164 L.Ed.2d 589 (" 'plaintiff must allege personal injury' " ); *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S. Ct. 1717, 109 L.Ed.2d 135 (1990) ("'distinct'" ); *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L.Ed.2d 556 (1984) ("personal" ); *Valley Forge, supra*, at 472, 102 S. Ct. 752, 70 L.Ed.2d 700 (standing requires that the plaintiff " 'personally has suffered some actual or threatened injury'" ); *United States v. Richardson*, 418 U.S. 166, 177, 94 S. Ct. 2940, 41 L.Ed.2d 678 (1974) (not "undifferentiated" ); *Public Citizen, Inc. v. National Hwy*. *Traffic Safety Admin*., 489 F.3d 1279, 1292-1293, 376 U.S. App. D.C. 443 (CADC 2007) (collecting cases).

*Spokeo, supra* at: 136 S. Ct. 1540 (2016)

[9]In *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S. Ct. 1724-25 (1990) the Court explained what "imminent" means:

> Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be "certainly impending" to constitute injury in fact. [internal quotation omitted].''

9

The Supreme Court further addressed the question of the showing required to establish standing based on a threat of "imminent" harm in *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 133 S. Ct. 1138 (2013).   There, a number of attorneys and human rights, labor, legal, and media organizations, who were United States persons, claimed that they engaged in sensitive international communications with individuals who they believed were likely targets of surveillance under a new statutory provision, 50 U.S.C.   §1881(a), which was added by a 2008 Amendment to the Foreign Intelligence Surveillance Act of 1978 ("FISA").   The *Clapper* claimants sought a declaration that § 1881a was facially unconstitutional and a permanent injunction against § 1881a authorized surveillance.

The Second Circuit had determined that the *Clapper* claimants showed (1) an "objectively reasonable likelihood" that their communications will be intercepted at some time in the future, and (2) that the claimants were suffering present injuries resulting from costly and burdensome measures they take to protect the confidentiality of their international communications from possible § 1881a surveillance.  The Supreme Court found that the objectively reasonable likelihood test was inconsistent with the requirement that "threatened injury must be certainly impending to constitute injury in fact" and reversed the Second Circuit.  The *Clapper*  Court concluded that the Claimants' "theory of future injury [was] too speculative to satisfy the *well-established* requirement that threatened injury must be 'certainly impending.' E.g., *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S. Ct. 1717, 109 L.Ed.2d 135 (1990).[italics supplied for emphasis]." *Clapper, supra* at: 568 U.S. 401, 133 S. Ct. 1143.

The *Clapper* Court found that the Claimants' standing theory was based on a highly attenuated chain of possibilities, which it listed as follows:

> Furthermore, respondents' argument rests on their highly speculative fear that: (1) the Government will decide to target the communications of non-U.S. persons with whom they communicate; (2) in doing so, the Government will choose to invoke its authority under § 1881a rather than utilizing another method of surveillance; (3) the Article III judges who serve on the FISC [Foreign Intelligence Surveillance Court] will conclude that the Government's proposed surveillance procedures satisfy § 1881a's many safeguards and are consistent with the Fourth Amendment; (4) the Government will succeed in intercepting the communications of respondents' contacts; and (5) respondents will be parties to the particular communications that the Government intercepts.

*Clapper, supra* at:  568 U.S. 410, 133 S. Ct. 1148.   The *Clapper* Court noted that it had previously rejected a standing theory based on a speculative chain of possibilities in *Summers v. Earth Island Institute*, 555 U.S. 488, 496, 129 S. Ct. 1142 (2009) and *Whitmore, supra*, 495 U.S. 157-160. *Clapper, supra at*  568 U.S.410, 133 S. Ct. 1148.

The *Clapper* Court approved the *Lujan* definition of "imminent" where the Court said: "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes-- that the injury is certainly impending." *Lujan, supra* at: 504 U.S. 565, n. 2.  The *Clapper* Court then collected the authorities detailing what is  "imminent" or not:

> Thus, we have repeatedly reiterated that "threatened injury must be *certainly impending* to constitute injury in fact," and that '[a]llegations of *possible* future injury' are not sufficient. *Whitmore*, 495 U.S., at 158, 110 S. Ct. 1717, 109 L.Ed.2d 135 (emphasis [italics] added; internal quotation marks omitted); see also *Defenders of Wildlife*, *supra*, at 565, n. 2, 567, n. 3, 112 S. Ct. 2130, 119 L.Ed.2d 351; see *Daimler Chrysler Corp*., *supra*, at 345, 126 S. Ct. 1854, 164 L.Ed.2d 589; *Friends of the Earth, Inc. v. Laidlaw Environmental Services* (TOC), Inc., 528 U.S. 167, 190, 120 S. Ct. 693, 145 L.Ed.2d 610 (2000); *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L.Ed.2d 895 (1979). [Italics in the original].

*Clapper supra* at: 568 U.S. 409, 133 S. Ct. 1147.  *See also*:  **Simon v. Eastern Kentucky Welfare Rights Organization** 426 U.S. 26, 44, 96 S. Ct. 1917 (1976) (*Saying*: "Prior decisions of this Court establish that unadorned speculation will not suffice to invoke the federal judicial power.");

*Spokeo, supra at:*136 S.Ct.1550-1552.

A plaintiff who alleges sufficient injury to satisfy minimum constitutional limitations on federal jurisdiction may nonetheless be barred from federal court under the Supreme Court's prudential standing rules, because he asserts a generalized grievance shared in substantially equal measure by all or a large class of citizens, *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974), or because he seeks to "rest his claim to relief on the legal rights or interests of third parties," rather than his own. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S. Ct. 2197 (1975); *Gladstone v. Village of Bellwood*, 441 U.S. 91, 120, 99 S. Ct. 1601 (1979) (Rehnquist, dissenting); *See also*: *Lexmark International, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 134 S. Ct. 1377 (2014) (Removing the "zone of interest" cases from the prudential standing list). These prudential rules, however, are subject to modification by Congress,[10] which may grant to any person *satisfying Art. III's minimum standing requirements* a right "to seek relief on the basis of the legal rights and interests of others, and, indeed, [to] invoke the general public interest in support of [his] claim." *Warth, supra* at: 422 U.S. 501.   The Court has also recognized an exception to the rule that a party may not  assert the legal rights of a third party if the litigating party satisfies minimum Article III standing requirements, has a "close" relationship with the third party holding the right, and there is a "hindrance" to the third party's ability to protect his own interests. *Kowalski  v. Tesmer,* 543 U.S. 125, 130, 125 S. Ct. 564 (2004).[11]   In other words, the close

---

[10]Congress has not acted to eliminate the prudential rule as applied here.

[11]Although Plaintiffs have claimed that they have standing to assert the third-party rights of current employees to a safe workplace under the doctrine of third party standing recognized in *Tesmer*, *supra* that doctrine can have no application here because Plaintiffs' Complaint pleads no special injury that Plaintiffs' *personally suffered* as a result of Noah's supposed breach of its duty to provide *its employees* a safe workplace. There is no injury in fact pled. Furthermore, there is no special relationship between Plaintiffs and Noah's current employees that would support such a right in view of the conflict of interest between Plaintiffs and Noah's current employees over the prosecution of this lawsuit, and in all events, Noah's current employees are perfectly able to fend for themselves with impunity due to the anti-retaliation provisions of §5104 of the Act, the Occupational Safety and Health Act, and the Fair Labor Standards Act.

relationship and hindrance showings eliminate the prudential limitation for asserting a third party's rights, although the constitutionally mandated injury in fact requirement remains.

## II.   PLAINTIFFS FAIL TO STATE FACTS ESTABLISHING  STANDING AND THIS COURT ACCORDINGLY LACKS SUBJECT MATTER JURISDICTION.

Plaintiffs must plead and prove they have standing for each of the 3 separate claims they assert. See *Allen*, *supra* at: 468 U.S. 752 (*Saying* "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication *of the particular claims* asserted [italics supplied for emphasis]."); *Daimler Chrysler Corp., v. Cuno***,** 547 U.S. 332, 352, 126 S. Ct. 1854 (2006)(Saying: ".  .  . our standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press.").  The "injury in fact" test requires more than a showing of  injury to a cognizable interest. It requires that Plaintiffs prove that they are each among the injured.  *Lujan, supra.* We take up each claim seriatim.

Plaintiffs' public nuisance claim asserts that Noah's is subjecting *the general  public* to an increased *risk* of future COVID-19 infection.  Plaintiffs do not claim that they or anyone else is currently infected as a result of Noah's acts or omissions. The increased threat of infection that Plaintiffs, as members of the public, claim they face as a result of Noah's supposed public nuisance and the threatened infection itself are not particularized or in any way personal to Plaintiffs.  The increased threat and the infection are the same for all members of the public, and the relief Plaintiffs seek provides no benefit to Plaintiffs that is different in any way from the benefit each member of the public is to receive.  Plaintiffs state no facts establishing that Plaintiffs' contraction of COVID-19 is "imminent," "certainly impending," or even "highly probable."   Plaintiffs aver no facts establishing the existence of an imminent threat to them or the public of COVID infection

13

emanating from Noah's.  Indeed, supposed future infection traceable to Noah's is subject to a chain of possibilities that may or may not occur.

Noah's requests this Court to take judicial notice pursuant to FRE 201 of the fact that emergency use authorizations have been issued by the Food and Drug Administration ("FDA") for two vaccines for the coronavirus that are being distributed currently, as evidenced by FDA News Releases: *FDA Takes Additional Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for Second COVID-19 Vaccine*, dated December 18, 2020 available at https://www.fda.gov/news-events/press-announcements/fda-takes-additional-action-fight-against-covid-19-issuing-emergency-use-authorization-second-covid and *FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for First COVID-19 Vaccine*, dated December 11, 2020, available at https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19.

Noah's is not responsible for COVID-19.  In other words, the infection did not originate at Noah's plant; it came from China.  A worker, visitor, or some other extraneous source has to bring the virus to Noah's plant for Noah's to affect the infection equation.  It is possible that will not occur, which eliminates Noah's supposed public nuisance.

Plaintiffs may possibly contract the virus from someone or something wholly unrelated to Noah's.  Plaintiffs will face no material risk of infection traceable to Noah's supposed public nuisance, after either Plaintiffs are vaccinated, or the Noah's work force is vaccinated.  Plaintiffs will suffer no material risk of infection traceable to Noah's if they socially distance and wear masks around all Noah's personnel and continue to stay away from Noah's.

For Plaintiffs to contract COVID -19 in a way that would be traceable to Noah's, a multitude of contingencies will have to occur, including 1) an extraneous source brings the virus to Noah's plant before Noah's workers are vaccinated, and one or more Noah's employees contract the virus; 2) the infected Noah's worker(s) do not take sick leave, do not quarantine, and spread the infection to other unvaccinated workers at the plant as a result of Noah's COVID-19 procedures;  3) infected Noah's workers, who do not quarantine,  spread the infection to persons outside the plant, who are not vaccinated,  who do not properly social distance,  and who do not wear a mask; 4) the infected Noah's workers, who do not quarantine or the persons they infect outside the Plant traceable to Noah's COVID-19 procedures spread the infection to Plaintiffs who are not vaccinated,  who do not properly socially distance, who do not wear a mask, and who are susceptible to the virus even though they may have already been infected.   This highly attenuated chain of possibilities defeats any contention that the risk of harm to Plaintiffs and the public referenced in the Complaint is imminent, i.e., that the threat of infection traceable to Noah's is certainly impending (i.e., about to happen or forthcoming) or highly probable to occur.   Indeed, Plaintiffs plead no facts establishing that transmission of the virus to them or to the public is even likely i.e., greater than 50% infection rate.   An unlikely threat, even though increased by the supposed acts or omissions of Noah's, is not imminent.

Based on the foregoing, Plaintiffs have no standing to assert the public nuisance claim for each of the following reasons:

1) The First Claim for Relief for Public Nuisance states facts comprising a generalized grievance shared in substantially equal measure by Plaintiffs and all members of the community near Noah's plant, which is barred by the standing prudential limitation recognized in *Schlesinger v Reservists Comm. to Stop the War*, 418 U.S. 208 (1974) (Challenged action, standing alone, would  adversely affect only the generalized interest of all citizens in constitutional governance); *See also*: *United States v. Richardson*, 418 U.S. 166 (1974) (Taxpayer suit challenging the Government's failure to  disclose  the  expenditures  of  the  Central  Intelligence

Agency, rested upon an impermissible "generalized grievance," and was inconsistent with "the" framework of Article III" because " the impact on [plaintiff] is plainly undifferentiated and common to all members of the public."); *Gladstone v. Village of Bellwood*, 441 U.S. 91, 120, 99 S. Ct. 1601 (1979) (Rehnquist, dissenting);

2) The First Claim for Relief of the Complaint for Public Nuisance fails to state facts establishing either an actual particularized and concrete injury to Plaintiffs or a certainly impending imminent threat of particularized and concrete harm to Plaintiffs, traceable to Noah's acts and omission, and thus fails to aver the elements of injury in fact;[12] *Spokeo, supra*; *Clapper, supra*; *Lujan, supra*; *Hollingsworth v. Perry, 570 U.S. 693, 133 S. Ct. 2652 (2013)* (*Quoting Lujan, supra* at: 568 U.S. 573-574: "A litigant raising only a generally available grievance about government — claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large— does not state an Article III case or controversy. [internal quotation marks omitted]."); *Lance v. Coffman*, 549 U.S. 437, 439, 127 S. Ct. 1194 (2007) (per curiam ) (*Saying*: "Our refusal to serve as a forum for generalized grievances has a lengthy pedigree."); *Allen v. Wright*, 468 U.S. 737, 754, 104 S. Ct. 3315 (1984) (Saying: "[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court"); *Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S. Ct. 597 (1923) (*Saying*: "The party who invokes the [judicial] power must be able to show ... that he has sustained or is immediately in danger of sustaining some direct injury ... and not merely that he suffers in some indefinite way in common with people generally.").

---

[12]If Plaintiffs have standing to sue Noah's here for public nuisance, then everybody else in the community can too. This was not allowed at common law, which Justice Thomas asserts is relevant in fashioning standing rules:

> Common-law courts, however, have required a further showing of injury for violations of "public rights" -- rights that involve duties owed "to the whole community, considered as a community, in its social aggregate capacity." . . .**Generally, only the government had the authority to vindicate a harm borne by the public at large, such as the violation of the criminal laws.** See *id*., at 695-700. Even in limited cases where private plaintiffs could bring a claim for the violation of public rights, **they had to allege that the violation caused them "some extraordinary damage, beyond the rest of the [community]." [Citation omitted]** An action to redress a **public nuisance**, for example**, was historically considered an action to vindicate the violation of a public right at common law, "lest every subject in the kingdom" be able to "harass the offender with separate actions."** 3 Blackstone *219; see also 4 *id.*, at *167 (same). But if the plaintiff could allege "special damage" as the result of a nuisance, the suit could proceed. . .
> B. These differences between legal claims brought by private plaintiffs for the violation of public and private rights underlie modern standing doctrine and explain the Court's description of the injury-in-fact requirement.. . **The injury-in-fact requirement often stymies a private plaintiff's attempt to vindicate the infringement of public rights.** The Court has said time and again that, **when a plaintiff seeks to vindicate a public right, the plaintiff must allege that he has suffered a "concrete" injury particular to himself.** [Bold added for emphasis]. *Spokeo* at: 136 S. Ct. 1551-1552 (Thomas, Concurring).

Plaintiffs' Second and Third Claims for Relief purport to assert claims that belong to Noah's current employees.  Plaintiffs are not employees of Noah's, and Noah's owes no duty to provide Plaintiffs a safe workplace. Nor do Plaintiffs have a right to be informed of the sick leave provisions of the Act, which do not affect them as ex-employees. Plaintiffs lack standing to assert that they are "likely to experience [unspecified] future harm if Noah's Ark does not immediately satisfy its duty to provide a reasonably safe workplace" because  Plaintiffs seek relief that "no more directly and tangibly benefits [Plaintiffs] than it does the public at large."[13]  The same is true for the statutory violation claim.

In short, Plaintiffs have stated no facts establishing that they have personally suffered injury in fact as a result of the wrongs alleged in the Second and Third Claims for Relief.  Without that minimum constitutional requirement being satisfied, the issue whether Plaintiffs have third party standing is moot.  *Tesmer, supra*. Plaintiffs have no standing to assert the safe workplace claim and the claim for violation of the notice provision of the Act, for each of the following reasons:

1)   The Second and Third Claims for Relief of the Complaint fail to state facts establishing either an actual particularized and concrete injury to Plaintiffs or a certainly impending imminent threat of particularized and concrete harm to Plaintiffs, traceable to Noah's alleged failure to provide its employees a safe

---

[13]Although the Doe Plaintiffs do plead in their Second Claim for Relief  that "Noah's Ark's breach of its duty has caused harm to Plaintiffs, who have suffered physical harm associated with COVID-19 infection, emotional harm, and in some cases monetary harm," Complaint at ¶112, the Doe Plaintiffs claim no damages and thus plead no injury in fact.  As the Supreme Court stated in *O'Shea v .Littleton*, 414 U.S. 488, 495-496 (1974)). "[p]ast exposure to illegal conduct does not, in itself, show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  See also:  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S. Ct. 1660 (1983). (*saying*: "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again--a "likelihood of substantial and immediate irreparable injury.").  Because the Doe Plaintiffs no longer work for Noah's there is no chance of continuing present adverse effects on the Doe Plaintiffs arising out of Noah's alleged past and ongoing failure to provide a safe workplace to its employees.   In any event, Doe Plaintiffs' unpled negligence claims for damages for past breach of the duty to provide a safe workplace are barred by the exclusivity provisions of the Nebraska Workers Compensation Act.

workplace and/or Noah's alleged violation of the notice provision of the Act; *Spokeo, supra* (*Saying*: "Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."); *Lujan, supra*, at 572.; *Clapper, supra*; *Hollingsworth, supra*; *Lance, supra*; *Allen, supra*; *Mellon, supra*; *Braitberg v. Charter Communications, Inc.,* 836 F.3d 925, (8th Cir. 2016) (Alleged technical violation of the Cable Communications Policy Act, 47 U.S.C. § 551(e) by retaining personally identifiable information *without an allegation of improper use or disclosure* does not result in a concrete injury that confers Article III standing; a technical or hypothetical risk of harm is insufficient.); and

2)   The Second and Third Claims for Relief of the Complaint rest on the legal rights or interests of Noah's current employees, rather than Plaintiffs' interests. Plaintiffs have no standing to assert the rights of third parties not before the Court.   *Warth, supra. Gladstone v. Village of Bellwood*, 441 U.S. 91, 120, 99 S. Ct. 1601 (1979) (Rehnquist, dissenting);

For the foregoing reasons, Plaintiffs' Complaint fails to state facts establishing Plaintiffs' Article III standing to assert each of the three purported Claims for Relief in their Complaint and accordingly, this Court lacks subject matter jurisdiction of each of Plaintiffs' three purported claims.

### III.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF FOR PUBLIC NUISANCE.

Under applicable Nebraska law, individuals like the Plaintiffs, who allegedly suffer injury from a public nuisance that is the same kind of injury suffered by the public, have no private cause of action in equity to abate the public nuisance. *Ayers v. Citizens Railway Company,* 83 Neb. 26, 118 N.W. 1066, (Neb. 1908) (*Saying*: "It is a general rule that a public nuisance does not furnish grounds for an action in equity by an individual who merely suffers an injury which is common to the public. The courts of this country generally hold that it is essential to the right of an individual to relief by injunction against a public nuisance that he should show that he has suffered or will suffer some special injury other than that in which the public shares, and the difference between

the injury to him and to the public must be one of kind, and not merely of degree.").[14] A contrary rule would allow "every subject in the kingdom" [to] be able to "harass the offender with separate actions," as Lord Blackstone warned.   3 Blackstone 219.

Only a governmental plaintiff can pursue injunctive relief to abate a public nuisance that generally harms the public  *State ex rel. Spire v. Strawberries, Inc.,* 239 Neb. 1, 473 N.W.2d 428, (Neb. 1991) (*overld in part on other grounds American Amusements Co. v. Nebraska Dept. of Revenue,* 807 N.W.2d 492 (2011) (*Saying*; "Injunction is a proper remedy **to be used by the State** in the protection of public rights, property, or welfare, whether or not the acts complained of violate a criminal statute or constitute a nuisance. [Bold added for emphasis]"); *State ex rel. Hunter v. Araho,* 137 Neb. 389, 289 N.W. 545, 551 (Neb. 1940)("As a public nuisance concerns the public generally, **it is the duty of the government to take measures to abate or enjoin it.** Hence, it follows that **the government can obtain an injunction to restrain a public nuisance**, without showing any property right in itself . . . Therefore, wherever a public nuisance is shown, equity must enjoin it **at the suit of the government.** [Bold added for emphasis].").  Plaintiffs effectively seek to enlist this Court to take over the job of the Nebraska public health officials and the Occupational Safety and Health Administration to oversee safety at Noah's plant, which, with all due respect, is not within this Court's job description.

The harm that Plaintiffs' public nuisance claim seeks injunctive relief to avert is the increased risk of COVID-19 infection, which is an undifferentiated and unparticularized type of harm that is the same for all persons susceptible to the virus.  The supposed "significant and

---

[14]Nebraska has followed this special injury rule repeatedly for over 100 years. *See*: *Hartford v. Womens Services, P.C.,* 239 Neb. 540, 477 N.W.2d 161, (Neb. 1991); *Schroder v. City of Lincoln*, 155 Neb. 599, 52 N.W.2d 808, (Neb. 1952); *Michelsen v. Dwyer,* 158 Neb. 427, 63 N.W.2d 513, (Neb. 1954); *Chizek v. City of Omaha,* 126 Neb. 333, 253 N.W. 441, (Neb. 1934); *Gleason v. Loose-Wiles Cracker & Candy Company,* 88 Neb. 83, 129 N.W. 173, (Neb. 1910); *Kittle v. Fremont,* 1 Neb. 329, (Neb. 1871).

unique" *risk* of "irreparable harm" that Plaintiffs assert in ¶105 of the Complaint that they face is the exact kind of conjectural harm the public faces. Furthermore, the injuries that Plaintiffs allege at ¶106, Compl. that Noah's proximately caused them are the increased risk of infection, which is precisely the same harm Plaintiffs claim Noah's has allegedly caused the community at large. See ¶103, Compl. (*Saying*: "This transmission has caused and will cause widespread disease, hospitalizations, and death, not only among Noah's Ark workers, but also their family members, the people they live and socialize with, and members of the public with whom they interact.").

In *Palmer v. Amazon.Com, Inc.,* 20-cv-2468 (BMC) (E.D.N.Y. November 1, 2020), the District Court for the Eastern District of New York, applying the same special injury rule followed by Nebraska courts, concluded that an *employee's* public nuisance claim for COVID-19 problems was not actionable under New York law: "A private action for public nuisance cannot be maintained where the injury is "so general and widespread as to affect a whole community." (citation omitted).  The *Palmer* Court's analysis of the special injury issue is instructive:

> Here, plaintiffs' alleged injuries are that they have an increased risk of contracting COVID-19 and fear of the same because they work in conditions, or live with someone who does, that increase the risk of spread of COVID-19. This injury is common to the New York City community at large. Plaintiffs and the public alike face varying levels of risk of exposing themselves and the people they live with to the virus. Unlike the noxious landfill, a malarial pond, or a pigsty, JFK8 is not the source of COVID-19, emitting the virus from a single source into an otherwise healthy world. The public at large cannot avoid COVID-19 simply by avoiding JFK8, its immediate surrounding area, and its employees. Instead, plaintiffs and the public risk exposing themselves to COVID-19 nearly anywhere in this country and the world.

> Both plaintiffs' concern and their risk present a difference in degree, not kind, from the injury suffered by the public at large and thus is not actionable in a private action for public nuisance.

If employees who work at the plant every day have no cognizable public nuisance claims, *a fortiori* the Plaintiffs in this case, who do not work at the Hastings plant, have no viable public nuisance claims.

Finally, the problems that Dr. Leonard claims his practice will have in an outbreak are not special injuries suffered by him personally, and in all events are the same kind of loss businesses in the community will suffer generally and thus do not constitute special injury.  See *Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp*., 345 N.W. 2d 124 (Iowa 1984) (Saying: "The plaintiff must suffer special pecuniary harm from the loss of access. Severe pecuniary loss is usually a special type of harm, but if a whole community suffers such loss, then it becomes a public wrong and the plaintiff cannot recover. Thus, the question becomes whether so many businesses have suffered the same economic harm that the plaintiff's damages are no longer special."); Prosser and Keaton on the Law of Torts, Nuisance § 90 at 650 (5th ed. 1984; "Prosser") (*Saying*: "Where, however, the pecuniary loss is common to the whole community, or a large part of it, as where a whole area of a town is cut off by a viaduct, or the draining of a good fishing lake affects all the fishing camps in the vicinity, it has been regarded as no different in kind form the common misfortune and the private action cannot be maintained.")   The mental distress that Plaintiffs might claim that they will have if their friends at Noah's plant become sick or die is not special injury because emotional distress resulting from the sickness or death of a friend is not a legally cognizable injury.  There is no invasion of a legally protected interest.  Such mental distress is "damnum absque injuria."

Plaintiffs' public nuisance claim is fatally deficient for another reason. As Plaintiffs concede at ¶¶94, 96, 98, and 100 of their Complaint, Noah's has violated no law.  In  *State ex rel. Spire v. Strawberries, Inc.,* 239 Neb. 1, 473 N.W.2d 428, (Neb. 1991)[15] the Nebraska Supreme Court quoted Prosser and Keaton on the Law of Torts, Nuisance § 90 at 643-44 (5th ed. 1984)

---

[15]The Nebraska Supreme Court would not have spent the time and effort it did in *Strawberry* discussing whether the defendant violated the gambling statute had it not been necessary to the public nuisance claim.

approvingly for the proposition that public nuisance "comprehends a miscellaneous and diversified group of minor criminal offenses, based on some interference with the interests of the community [and] includes interferences with ... public morals."  Prosser further observes: "[a]t common law, a public nuisance was always a crime, and punishable as such;" and in a footnote Prosser notes that "[n]o case has been found of tort liability for a public nuisance which was not a crime." Prosser and Keaton on the Law of Torts, Nuisance § 90 at 645 (5th ed. 1984). Here there is no illegal activity and therefore no common law public nuisance as a matter of law.  In contrast, a *private* nuisance, in which the plaintiff's right to use and enjoy his property is at issue,  may not be a crime.  *Sarraillon v. Stevenson*, 153 Neb. 182, 188-89 (1950); see, e.g., *City of Syracuse v. Farmers Elevator, Inc.*, 182 Neb. 783 (1968).

### IV.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF FOR BREACH OF THE DUTY TO PROVIDE A SAFE PLACE TO WORK (NEGLIGENCE).

Plaintiffs' negligence claim fares no better, for it is axiomatic that ". . . negligence is actionable only when it results in damages." *Bittner v. Miller*, 226 Neb. 206, 212, 410 N.W.2d 478, 482 (1987).  *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.,* 234 Neb. 789, 452 N.W.2d 746 (1990) (*Saying*: "Because St. Paul's petition alleges only damages which might arise in the future, it fails to state a cause of action."); *Rural Cmty. Workers All. v. Smithfield Foods*, No. 5:20-CV-06063-DGK, 22 (W.D. Mo. May. 5, 2020)(*Saying*: "More importantly, however, Plaintiffs have not alleged they have suffered any injury, only that they may suffer an injury in the future. A potential injury is insufficient to state a claim of the breach of the duty to provide a safe workplace under Missouri law."). As Justice Cardozo famously wrote in *Martin v. Herzog*,  228 N.Y. 164, 126 N.E. 814 (N.Y. Ct. App 1920),  "[p]roof of negligence in the air, so to speak, will not do" (Pollock Torts [10th ed.], p. 472).

Plaintiffs' allegation that "[a]bsent prompt and immediate injunctive relief, Plaintiffs face a significant and unique *risk* of irreparable harm in the form of physical, emotional, and economic injuries [Italics supplied for emphasis]" states no claim for injunctive relief sounding in negligence, and Plaintiffs cite no Nebraska case law to the contrary.[16]  ¶105, Compl.

And then there is the problem that Plaintiffs are not even current employees to whom Noah's owes a legal duty to provide a safe place to work in any event.

## V.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR A PRIVATE ACTION FOR VIOLATION OF THE NOTICE PROVISION OF THE ACT.

The Act creates no private cause of action for violation of the notice provision of §5103. Plaintiffs' Third Claim for Relief should be summarily dismissed.

Furthermore,  Plaintiffs are not employees of the plant who suffered concrete harm resulting from Noah's alleged failure to provide the statutory notice. At best, Plaintiffs assert a bare procedural violation of the Act that inflicted no harm on Plaintiffs.

## VI.   THIS COURT SHOULD DISMISS THIS ACTION PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE.

This case involves technical occupation health and safety issues that are beyond the ken of this Court.  Furthermore, proper resolution of COVID – 19 safety protocols and procedures require nationwide uniformity.  This Court is unable to provide that uniformity.  For these reasons, this Court should invoke the doctrine of primary jurisdiction, as a sister 8th Circuit District Court did in *Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, 459 F. Supp. 3d 1228 (W.D. Mo. 2020).[17]

---

[16]Assuming arguendo, that Nebraska would allow a claim for injunctive relief  based on allegations of negligence without any pleading or proof of  actual damage, Plaintiffs would have to show certainly impending imminent harm that they have not pled and cannot truthfully plead in order to demonstrate irreparable harm.  See:  *O'Shea v .Littleton*, 414 U.S. 488, 495-496 (1974)); and  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S. Ct. 1660 (1983).  See discussion of imminent harm in the standing section of this brief.  The lack of impending certain harm here is also fatal to Plaintiffs' Motion for Preliminary Injunction.

[17]Available at:  Rural Cmty. Workers All. v. Smithfield Foods, No. 5:20-CV-06063-DGK | Casetext Search + Citator.

See also:  *Palmer v. Amazon.Com, Inc.,* 20-cv-2468 (BMC) (E.D.N.Y. November 1, 2020), where the Court also invoked the primary jurisdiction doctrine in a COVID-19 worker suit.

## CONCLUSION

Plaintiffs' lack of standing requires that the Motion be granted on jurisdictional grounds and the Complaint dismissed.  Alternatively,  this Court should dismiss the Complaint because it fails to state a claim for relief for  public nuisance, breach of the duty to provide a safe workplace, and violation of the notice provision of §5103 of the Act.

RESPECTFULLY SUBMITTED,

Dated:  January 11,  2021.

NOAH'S ARK PROCESSORS, LLC, Defendant
By: s/**W. Patrick Betterman**
W. Patrick Betterman, 10306
W. Patrick Betterman P.C., L.L.O.
3628 N. 163rd Plz.
Omaha, NE 68116
(402) 333-3334 (voice)
(402) 552-8808 (facsimile)
pat@betterlaw.com
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 11th day of January 2021, he emailed a copy of the foregoing to Plaintiffs' attorneys at the following email addresses:

Adam Sipple (SBN 20557) - ajsipple@aclunebraska.org;
Rose Godinez (SBN 25925) - rgodinez@aclunebraska.org;
Maren Lynn Chaloupka (SBN 20864) - mlc@chhsclaw.net;
Spencer Amdur - samdur@aclu.org;
Julie Veroff - jveroff@aclu.org;
Lee Gelernt - lgelernt@aclu.org; and
Noor Zafar - nzafar@aclu.org.

s/ *W. Patrick Betterman*

W. Patrick Betterman, 10306

24

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of NECivR 7.1(d) because it contains 8,975  words. The undersigned further certifies that he relied on the Microsoft Word count function (Microsoft Word for Microsoft 365 MSO (16.0.13426.20352) 64-bit), which included all text including the caption, headings, footnotes, and quotations.

s/ *W. Patrick Betterman*

W. Patrick Betterman, 10306