IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
LINCOLN DIVISION

| | | |
|---|---|---|
| ALMA; ISABEL; ANTONIO; AND DANIEL J. LEONARD, | ) ) | CASE NO.: 4:20-CV-03141-JMG-CRZ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **BRIEF IN SUPPORT OF NOAH'S** |
| vs. | ) | **SECOND RULE 12(b)(1) MOTION TO** |
| | ) | **DISMISS FOR LACK OF SUBJECT** |
| Noah's Ark Processor, LLC, | ) | **MATTER JURISDICTION** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon the Second Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction (the "Motion"; Filing No. 58)[1] filed by Defendant Noah's Ark Processor, LLC ("Noah's"), the operator of a meat packing plant in Hastings, Nebraska. Complaint, ¶4.[2] Plaintiffs are 3 former employees of Noah's, who are proceeding pseudonymously (collectively the "Doe Plaintiffs"), and Daniel J. Leonard ("Leonard"), a local Doctor, who owns a

---

[1]Available at: https://ecf.ned.uscourts.gov/doc1/11314646480.   This Motion supplements Noah's previously filed Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (Filing No. 50, available at: https://ecf.ned.uscourts.gov/doc 1/11314626806).  Noah's filed a Brief in Support of its prior Motion to Dismiss (Filing No. 51, available at https://ecf.ned.uscourts.gov/doc1/11314626812).

[2]The first issue of concern is whether Noah's has waived the right to assert the instant Motion in view of its earlier Rule 12(b)(1) Motion (Filing No. 50, available at: https://ecf.ned.uscourts.gov/doc1/11314626806). Fed. R. Civ. P. 12(g)(2) states: *Limitation on Further Motions.* Except as provided in Fed. R. Civ. P. 12(h)(2) or (3), a party that makes a motion under this rule [Fed. R. Civ. P. 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion. Fed. R. Civ. P. 12(h)(3) provides:  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  The instant Motion is within the Fed. R. Civ. P. 12(h)(3) exception limiting the scope of the Fed. R. Civ. P. 12(g)(2) waiver. *Montin v. Estate of Johnson*, No. 4:07CV3271, 2009 WL 250048 (D. Neb. Feb. 2, 2009) ("Defendants are correct in their assertion that the Rule 12(g)(2) limitations on successive motions do not prohibit motions relative to subject matter jurisdiction."); *GPMM, Inc. v. Tharp*, No. 8:19-CV-128, 2020 WL 6587091 (D. Neb. Feb. 14, 2020) ("Thus, a successive motion to dismiss is prohibited unless it could not have been made in the earlier motion; *it implicates subject-matter jurisdiction*; or it is raised in a motion for Judgment on the pleadings, at trial, or in a required pleading such as an Answer [italics supplied for emphasis].").  A motion to dismiss for lack of subject-matter jurisdiction may be made "at any stage in the litigation."  *GGA-PC v. Performance Eng'g, Inc.*, No. 8:16CV567, 2017 WL 2773532 (D. Neb. June 26, 2017) (*quoting Arbaugh v. Y & H Corp.* 546 U.S. 500,  506 (2006).

medical practice and works at a hospital.   Complaint ¶¶16, 17, 18, 19, and 89.   Plaintiffs filed a 3

Count Complaint asserting purported private causes of action against Noah's for:

    i)      public nuisance under the common law of the State of Nebraska arising out of Noah's alleged operation of its meat packing plant in a manner that increases the risk of  COVID-19 infection to  its workers, thereby  creating an increased risk of COVID-19 infection to the community at large;

    ii)     breach of the duty to provide a safe workplace (negligence) to its workers under the common law of the State of Nebraska by allegedly failing to implement basic and critical protections against COVID-19;  and

    iii)    violation of §5103[3] of the Families First Coronavirus Response Act (the "Act") by allegedly failing to post a notice approved by the Department of Labor that notifies Noah's employees of the sick leave provisions of the Act.

Plaintiffs allege in conclusory manner at ¶14 of their Complaint that:

This Court has federal-question jurisdiction , 28 U.S.C. § 1331, and pendent jurisdiction, 28 U.S.C. § 1367. The Court also has subject matter jurisdiction under 28 U.S.C. § 1332. Each Plaintiff is a resident of Nebraska. Defendant is a limited liability corporation and no member is a citizen of Nebraska. The amount in controversy exceeds $75,000.

The Complaint fails to allege the State of citizenship of each Plaintiff.

The Motion seeks dismissal of the Complaint because Plaintiffs' Complaint fails to state

facts establishing either federal question or diversity jurisdiction, and no such jurisdiction exists.

---

[3]§5103 of the Act states:

**SEC. 5103. NOTICE.**

(a) IN GENERAL.—Each employer shall post and keep posted, in conspicuous places on the premises of the employer where notices to employees are customarily posted, a notice, to be prepared or approved by the Secretary of Labor, of the requirements described in this Act.

(b) MODEL NOTICE.—Not later than 7 days after the date of  enactment of this Act, the Secretary of Labor shall make publicly  available a model of a notice that meets the requirements of subsection  (a).

This provision is explained at 29 C.F.R. § 826.80.

## STANDARD OF REVIEW

A Motion under Fed. R. Civ. P. 12(b)(1) challenges the subject matter jurisdiction of a court. The party claiming subject matter exists bears the burden of proof. *Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988, 2010 WL 3168368 (8th Cir. 2010). This Court recently summarized the standard of review for Rule 12(b)(1) motions *in eScholar LLC v. Nebraska Department of Education*, Case No. 8:20-CV-135 (October 28, 2020), thus providing a good place for us to start here:

> Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008). A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack" and a "factual attack." *Branson Label, Inc. v. City of Branson, Mo.,* 793 F.3d 910, 914 (8th Cir. 2015). In a facial attack, the Court merely needs to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id.* Accordingly, the Court restricts itself to the face of the pleadings and the nonmoving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). *Id.*; *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008). Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, may be considered. *Branson Label,* 793 F.3d at 914.

The instant Motion asserts a facial attack on the Complaint, and so the principles of review applicable to a Rule 12(b)(6) motion apply to Noah's Motion. This requires the Court to take all the factual allegations in the complaint as true, without being bound to accept as true a legal conclusion couched as a factual allegation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Zeb v. Benes, No. 4:20-CV-3075, 2021 WL 50454 at 1 (D. Neb. Jan. 6, 2021). Although when deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint, the Court may consider "matters of which judicial notice may be taken,*"* pursuant to Fed. R. Evid. 201. *Haworth v. Midland Credit Mgmt., Inc.*, No. 8:19-CV-46, 2019 WL 1572985 (D. Neb. Apr. 11, 2019) (". . . [W]ell-established rule that the Court

may take judicial notice of public records and may thus consider them on a motion to dismiss. [Citations omitted].”); *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2nd Cir. 1993); *Meyers v. PNC Fin. Servs. Grp., Inc.,* No. 3:19-CV-01892 (VAB), 2020 WL 7645436, at *4 (D. Conn. Dec. 23, 2020).

## STATEMENT OF FACTS

Plaintiffs’ First Claim for Relief for public nuisance states that “Noah’s Ark’s failure to implement the most basic and essential COVID-19 protections [relating to face masks, testing, social distancing, and sick leave during the COVID-19 pandemic] has caused and is reasonably certain to cause the transmission of COVID-19 both inside and outside the plant” and that  “[t]his transmission has caused and will cause widespread disease, hospitalizations, and death, not only among Noah’s Ark workers, but also their family members, the people they live and socialize with, and members of the public with whom they interact.”  Complaint at ¶¶102 and 103. Plaintiffs next allege in conclusory manner that “Noah’s Ark’s policies and practices [relating to the COVID-19 pandemic] constitute a public nuisance” and  “. . . substantially and unreasonably interfere with the common public right to public health and safety, because they create a substantially heightened risk of spreading a deadly virus.” Complaint ¶104.  Plaintiffs contend that “[a]bsent prompt and immediate injunctive relief, Plaintiffs face a significant and unique risk of irreparable harm in the form of physical, emotional, and economic injuries” and that Noah’s “ongoing conduct is a direct and proximate cause of Plaintiffs’ injuries and threatened injuries.” Complaint ¶¶105 and 106. Plaintiffs “request a declaration that Noah’s Ark’s policies and practices constitute a public nuisance, and they request injunctive relief to abate the nuisance.”  Complaint ¶108.  Plaintiffs make no claim for damages for any alleged past conduct on Noah’s part and claim no injury traceable to Noah’s alleged acts and omissions that is different from the injury that the community at large around Noah’s Plant *may*

suffer, assuming as we must for the purposes of this Motion that the allegations of the Complaint are true.

Plaintiffs' Second Claim for Relief alleging the workplace safety claim charges that "Noah's Ark has a duty to furnish *its employees* with a reasonably safe place in which to work [italics supplied for emphasis]" and  "Noah's Ark voluntarily assumed this duty of care." Complaint at ¶110.  Plaintiffs next state that "[b]y failing to implement basic and critical protections against COVID-19, Noah's Ark breached and continues to breach this duty." Complaint at ¶111.  Although Plaintiffs allege that "Noah's Ark's breach of its duty has caused harm to Plaintiffs, who have suffered physical harm associated with COVID-19 infection, emotional harm, and in some cases monetary harm" in the past, they make no claim for damages for these alleged past injuries.[4] Complaint at ¶114.   Instead, Plaintiffs plead that they "are likely to experience future harm if Noah's Ark does not immediately satisfy its duty to provide a reasonably safe workplace . . . request a declaration that Noah's Ark has breached and is breaching this duty, and . . .  request injunctive relief to ameliorate the breach." Complaint at ¶¶113 and 114.  Plaintiffs state no facts establishing the nature of the future harm they fear that they will *personally* experience as a result of Noah's failure to provide a safe work *to its employees*.

Plaintiffs' Third Claim for Relief for violation of the Act's notice requirement codified at §5103 of the Act posits that "Noah's Ark has not posted any notice about the Act, including its requirements or the procedures for filing complaints for violations of the Act" and "Noah's Ark is

---

[4]Nor could the Doe Plaintiffs state a claim for personal injuries arising out of their past employment with Noah's, because of the bar of the exclusivity provisions of the Nebraska Workers Compensation Act, codified at Neb. Rev. Stat. §§48-111 and 48-148.  *Palmer v. Amazon.Com, Inc.,* 20-cv-2468 (BMC) (E.D.N.Y. November 1, 2020) (Applying doctrine of primary jurisdiction to public nuisance and safe workplace negligence claims, but alternatively stating in *dictum* that New York Workers Compensation Act exclusivity provision barred claims for past injury and injunctive claim for future injury, plaintiffs suffered no special injury that would entitle them to bring a private public nuisance claim, and the threat of future harm in contracting the COVID-19 virus imposed no liability against a defendant in tort).

in violation of the . . . Act's notice requirement." Complaint at ¶¶116 and 117. Plaintiffs then aver that Noah's "violation has interfered *with workers' ability* to exercise their rights to paid sick leave under the Act [italics supplied for emphasis]" and "request a declaration that Noah's Ark is in violation of the  . . . Act and an injunction ordering it [Noah's] to comply with the Act's requirements." Complaint at ¶117 and 118.

Plaintiffs state no facts establishing that any provision of the Act creates a private cause of action for violation of the Act.  Not surprisingly, Plaintiffs now sheepishly assert that they no longer are pursuing a claim for violation of the statute.  See Notice of Changed Authority (Filing No. 47, available at: https://ecf.ned. uscourts.gov/doc1/11314623658) at page 1 (". . . Plaintiffs are no longer pressing their claim that the plant post the specific notice required by the Act") and Plaintiffs' Brief in Opposition to Motion to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction (Filing No. 55, available at: https://ecf.ned.uscourts.gov/doc1/11314631639) at page 11 ("As Plaintiffs have explained, they are no longer pressing their claim under the Families First Coronavirus Response Act.. .").

## ARGUMENT

**I.    THERE IS NO FEDERAL-QUESTION JURISDICTION   IN THIS CASE BECAUSE   THE ACT CREATES NO PRIVATE RIGHT OF ACTION FOR VIOLATION OF THE NOTICE PROVISION.**

This Court summarized the elements of federal-question jurisdiction  embodied in 28 U.S.C. § 1331 in this excerpt from *Oglala Sioux Tribe v. Schwarting*, 894 F. Supp. 2d 1195, 1199, 2012 WL 4482430 (D. Neb. 2012):

> Section 1331 provides that a federal district court "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A suit arises under the law that creates the cause of action. *Mims v. Arrow Fin. Servs*., ___ U.S. ___, 132 S. Ct. 740, 748, 181 L.Ed.2d 881 (2012). So generally, when federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction under § 1331. *Mims*, 132 S. Ct.

6

at 748-49. In such an instance, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. *Phillips Petroleum*, 415 U.S. at 127, 94 S. Ct. 1002.

Or, a state-law claim can give rise to federal-question jurisdiction so long as it appears from the complaint that the right to relief depends upon the construction or application of federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-13, 125 S. Ct. 2363, 162 L.Ed.2d 257 (2005). But such federal-question jurisdiction  is limited to state-law claims that "'really and substantially'" involve a dispute or controversy respecting the validity, construction, or effect of federal law. *Id*. at 313, 125 S. Ct. 2363. In other words, the plaintiff's right to relief must necessarily depend on resolution of a substantial question of federal law. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690, 126 S. Ct. 2121, 165 L.Ed.2d 131 (2006).

In *Schwarting, supra*, the Oglala Sioux Tribe (the "Tribe") sued several manufacturers, distributors, and retailers of beer and other alcoholic beverages (collectively the "Purveyors"), for damages arising out of the sale of alcohol in Whiteclay, Nebraska, for consumption on the nearby Pine Ridge Indian Reservation.  The Tribe claimed *inter alia*[5] that the Purveyors entered into a civil conspiracy to violate 18 U.S.C. §1161, by which "Congress 'delegated authority to the States as well as to the Indian tribes to regulate the use and distribution of alcoholic beverages in Indian country'[Citation omitted]."  *Schwarting*, *supra* at:  894 F.Supp.2d 1198. Generally, the introduction of alcohol into "Indian country" is prohibited by federal law. See 18 U.S.C. §§ 1154, 1156, 3113, 3488, and 3669. *Id*.  § 1161 authorizes state and tribal governments to effectively legalize alcohol, but this was not done on the Reservation.  *Id*.  The Tribe contended that a federal question was presented because "§ 1161 specifically addresses the very issues raised by this lawsuit. . . " *Schwarting*, *supra* at: 894 F.Supp.2d 1200.

This Court concluded that none of the statutes that the Tribe relied upon for federal-question jurisdiction  either expressly or impliedly created a private federal cause of action that would give

---

[5]The Tribe also asserted public and private nuisance claims, a claim for injunctive relief, and a claim that the Purveyors engaged in a common enterprise to sell beer through Whiteclay in amounts that cannot be legally sold, consumed or possessed under the laws of the State of Nebraska and the Tribe. *Schwarting*, *supra* at: 894 F.Supp.2d 1198.

rise to federal-question jurisdiction. *Schwarting*, *supra* at: 894 F.Supp.2d 1200. Sections 1154 and 1156 were criminal statutes, and § 1161 simply conferred authority on the Tribe to suspend §§ 1154 and 1156, which the Tribe never exercised. *Id.* A federal statute that contains no specific statutory language demonstrating Congress's intention to expressly or impliedly create a private cause of action provides no basis for federal-question jurisdiction. *Id.*

This Court further concluded[6] in *Schwarting*, *supra* that the fact that violation of federal law was an element of the Tribe's state law causes of action did not confer federal-question jurisdiction, because the federal statutes at issue did not create a private right to relief, which rendered the violation of federal law insufficiently "substantial" to confer federal-question jurisdiction.

---

[6]This Court's analysis in support of this conclusion is highly instructive for the present purposes:

> And more importantly, **the absence of a private right of action under § 1161 also precludes a finding that an issue arising under § 1161 can give rise to federal-question jurisdiction under § 1331**. The Supreme Court has explained that even when a state-law action discloses a contested and substantial federal question, "the exercise of federal jurisdiction is subject to a possible veto." *Grable & Sons*, 545 U.S. at 313, 125 S. Ct. 2363. The federal issue **"will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."** *Grable & Sons*, 545 U.S. at 313-14, 125 S. Ct. 2363.
>
> **The ultimate import of concluding that there is no federal private cause of action is that it would flout congressional intent to provide a private federal remedy for the violation of the federal statutes**. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 812, 106 S. Ct. 3229, 92 L.Ed.2d 650 (1986). And "**it would similarly flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute"** because the statute is said to be part of a state-law claim. See 894 F.Supp.2d 1202 *id.* at 812, 106 S. Ct. 3229. Given the significance of a congressional determination to preclude federal private remedies, "**the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system**." *Id.* at 814, 106 S. Ct. 3229. So, the congressional determination that there should be no federal remedy for the violation of a federal statute is **tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction**. *Id.* Simply put, "**a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States'" within the meaning of § 1331**. *Merrell Dow*, 478 U.S. at 817, 106 S. Ct. 3229; see also, e.g., *Adventure Outdoors*, 552 F.3d at 1295; *Mulcahey v. Columbia Organic Chem. Co., Inc.*, 29 F.3d 148, 152-53 (4th Cir.1994). (Bold added for emphasis).

*Schwarting*, *supra* at: 894 F.Supp.2d 1202.

*Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 2020 WL 1225265 (8th Cir.), *cert. denied,* 141 S. Ct. 621, 2020 WL 6121578 (2020) ("*Merrell Dow* forecloses the removal of state law claims that merely include a violation of federal law as an element of the offense, without other reliance on federal law."); *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp*., 559 F.3d 772, 779 (8th Cir. 2009);[7] *Turntine v. Peterson*, 959 F.3d 873, 879, 2020 WL 2516631 (8th Cir. 2020) ("Plaintiffs' three state-law defamation claims do not appear to require 'resolution of a substantial, disputed federal question' so as to implicate federal-question jurisdiction.").

Since the Act neither expressly nor impliedly creates a private cause of action for violation of the notice requirement of §5103, the alleged violation of §5103 does not give rise to federal-question jurisdiction in the case at bar. *Schwarting, supra*.[8]   In any event, Plaintiff dismissed its claim based on violation of § 5103 pursuant to Fed. R. Civ. P. 41(a) by filing  Plaintiffs' Notice of Changed Authority (Filing No. 47), thus eliminating any theoretical claim of federal-question jurisdiction.   28 U.S.C. § 1367 provides no basis for this Court to exercise pendent jurisdiction pursuant to 28 U.S.C. § 1367(a), because this Court never had original jurisdiction in the first instance. Plaintiffs' conclusion at ¶ 14 of the Complaint that this Court has federal-question and

---

[7] In *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp*., 559 F.3d 772, 779 (8th Cir. 2009) the Eighth Circuit stated:

"Federal question jurisdiction is available only where (1) the right to relief under state law depends on the resolution of a substantial, disputed federal question, and (2) the exercise of jurisdiction will not disrupt the balance between federal and state jurisdiction adopted by Congress. See *Grable & Sons Metal Prods., Inc. v. Darue Eng & Mfg*., 545 U.S. 308, 313-14, 125 S. Ct. 2363, 162 L.Ed.2d 257 (2005).

[8] See  also:  *Lowe v. ViewPoint Bank*, 972 F. Supp. 2d 947, 954, 2013 WL 5273122 (N.D. Tex. 2013)  citing *Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 817 (1986) ("When a private citizen relies on a federal statute as a basis for federal question jurisdiction, that statute must provide a private cause of action, or else a federal court will not have subject matter jurisdiction to hear the dispute."); *Aaronson v. Kangarani,* No. 1:19-cv-00468-CL, 2019 WL 3490447, at *3 (D. Or. June 20, 2019) ("As such, where no private right of action exists to enforce the criminal statute, the statute cannot serve as the basis for federal question jurisdiction."), *adopting report and recommendation,* 2019 WL 3462540 (D. Or. July 31, 2019). *Wisdom v. First Midwest Bank,* 167 F.3d 402, 409 (8th Cir. 1999) (*holding*: District Court correctly dismissed civil claims under the mail fraud, wire fraud, and extortion statutes at 18 U.S.C. §§ 1341, 1343, and 1951, because Congress created no civil private right of action).

pendent jurisdiction is incorrect as a matter of law and must be ignored. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and neither will one that "tenders naked assertions devoid of further factual enhancement." *Id.* [9] This Court "need not 'credit a complaint's conclusory statements without reference to its factual context.'" *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146–47, 2011 WL 6317466 (2d Cir. 2011). With federal and pendent jurisdiction lacking, there must be diversity jurisdiction for this Court to proceed, an issue to which we turn.

## II. THERE IS NO DIVERSITY JURISDICTION HERE.

Plaintiffs fail to plead the States of their citizenship. They simply aver that they are residents of Nebraska. ¶14 Complaint. This allegation fails to state diverse *citizenship*, for *residence* is not the equivalent of *citizenship*. *Guar. Nat. Title Co. v. J.E.G. Assocs.*, 101 F.3d 57, 59, 1996 WL

---

[9] Even if this Court had original jurisdiction, the discretionary exercise of pendent jurisdiction over the remaining state tort claims would not be proper here. In *Thompson v. Kanabec County*, 958 F. 3d 698 (8th Cir. 2020), the Eighth Circuit explained that exercise of pendent jurisdiction after all federal claims have been dismissed is not proper in the absence of "unusual circumstances," which are lacking here:

> The Supreme Court has noted that when all federal law claims are dismissed, the balance of factors usually points toward declining to exercise jurisdiction over the remaining state law claims. *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). The factors include: judicial economy, convenience, fairness, and comity. *Id. at 350*, 108 S. Ct. 614. Thompson has pointed to "no factor that distinguishes this case from the usual case;" therefore, the balance of factors demonstrates that Thompson's state law claims properly belong in state court. *Wilson v. Miller,* 821 F. 3d 963, 971 (8th Cir. 2016).

*Johnson v. Sheffield Financial,* 4:19-cv-00616-LPR (EDCD Ark. January 22, 2021) ("Declining to exercise supplemental jurisdiction over state law claims once all federal claims have been dismissed should be-generally speaking-the default stance of a federal court."); *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1016–17, 2015 WL 1403766 (8th Cir. 2015) (quoting *In re Can. Import Antitrust Litig.,* 470 F3d. 785, 792 (8th Cir. 2006) ("When a district court dismisses federal claims over which it has original jurisdiction, the balance of interests usually will point toward declining to exercise jurisdiction over the remaining state law claims.")). In all events, comity requires that this Court not exercise pendent jurisdiction over Plaintiffs' public nuisance and negligence claims because the issue whether the Nebraska Supreme Court would conclude that Noah's lawful operation of its plant would fall within the definition of a public nuisance, whether injunctive relief is proper for a negligence claim without a showing of present harm or damages, and whether the exclusivity provisions of the Nebraska Workers Compensation Act bar Plaintiffs' workplace claim are issues that should be decided by a Nebraska court in the first instance, not this Court.

663437 (7th Cir. 1996). ("When the parties allege residence but not citizenship, the court must dismiss the suit."); *Wilkins v. Stapleton*, No. 617CV1342ORL37GJK, 2017 WL 11219132, at *1 (M.D. Fla. Aug. 1, 2017). (Dismissing on jurisdictional grounds a Complaint that pled residency instead of citizenship and named twenty-five fictitious parties with no jurisdictional allegation at all);[10] *Rapid Anesthesia Sols., P.C. v. Hajjar,* No. 17-CV-4705 (KAM)(LB), 2019 WL 263943, at *2 (E.D.N.Y. Jan. 18, 2019) ("Plaintiffs fail to establish the citizenship of either plaintiff Dr. Starke or defendant Dr. Hajjar. '[I]t is well-established that allegations of residency alone cannot establish citizenship.' *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997)."); *Sweeten v. Chesapeake Energy Corp.*, No. 3:11-CV-0261, 2011 WL 601616, at *1 (M.D. Pa. Feb. 11, 2011)("The Plaintiffs fail to allege in which state they have citizenship. The Court is informed of the states in which the Plaintiffs are 'residing.' Residence is not the same as domicile and does not establish citizenship for diversity purposes."). This pleading defect requires dismissal of the Complaint in this case.

Noah's also disputes that the amount in controversy exceeds the statutory minimum required by 28 U.S.C. § 1332(a)(1)[11] for diversity of citizenship jurisdiction.  "Typically, complaints need

---

[10]The *Wilkins* Court bemoaned the fact that:

> Time and again, counsel's submissions improperly allege an individual's residency instead of citizenship and an unincorporated business entity's (LLCs, e.g.) "principal place of business" instead of the identity and citizenship of every individual member. This failure to demonstrate even a passing familiarity with the jurisdictional requirements of the federal courts results in a waste of judicial resources that cannot continue.");

*Wilkins v. Stapleton*, No. 617CV1342ORL37GJK, 2017 WL 11219132, at *1 (M.D. Fla. Aug. 1, 2017).

[11]28 U.S.C. § 1332(a)(1) provides:  **"(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—**(1)** citizens of different States; . . . "  Plaintiffs plead that the amount in controversy exceeds $75,000. Complaint, ¶14.  That allegation fails to plead the requisite jurisdictional amount because the statutory minimum amount in controversy must exceed $75,000 *exclusive of interest and costs*.  In other words, the statutory minimum amount in controversy must exceed $75,000 plus interest and costs, which is greater than the $75,000 amount Plaintiffs allege.

only allege the jurisdictional amount in good faith and will be dismissed only if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Am. Family Mut. Ins. Co. v. Vein Centers for Excellence, Inc.*, 912 F.3d 1076, 2019 WL 80707 (8th Cir. 2019).[12] But "[i]f the defendant challenges the plaintiff's allegations of the amount in controversy, then the plaintiff must establish jurisdiction by a preponderance of the evidence." *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 931, 2010 WL 3489045 (8th Cir. 2010);[13] *Peterson v. The Travelers Indem. Co.*, 867 F.3d 992, 995, 2017 WL 3480488 (8th Cir. 2017); *Trimble v. Helwig*, No. 7:19-CV-5015, 2020 WL 2850047 (D. Neb. June 2, 2020). The legal certainty standard[14] is met where the "legal impossibility of recovery [is] so certain as virtually to negative [negate] the plaintiff's good faith in asserting the claim." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638, 2010 WL 4486746 (4th Cir. 2010) (internal quotation marks and citation omitted); *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822, 2011 WL 3518174 (8th Cir. 2011). See also: *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, 81 S. Ct. 1570, 6 L. Ed. 2d 890, 4 Fed. R. Serv. 2d 179

---

[12] The *Vein Center* Court quoted *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 931, 2010 WL 3489045 (8th Cir. 2010) (alteration in original), which in turn quoted *Kopp v. Kopp*, 280 F.3d 883, 884, 2002 WL 233125 (8th Cir. 2002), for the proposition referenced.

[13] The *Scottsdale* Court quoted *Kopp v. Kopp*, 280 F.3d 883, 884–885, 2002 WL 233125 (8th Cir. 2002), which in turn quoted *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 188–89, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)) for the proposition referenced.

[14] Wright & Miller, *Federal Practice and Procedure*, 14AA Fed. Prac. & Proc. Juris. §3704.1 (4th ed.) (footnotes omitted) succinctly describe this rule as follows:

> The district court is not obliged to accept the plaintiffs [sic] allegations regarding subject matter jurisdiction. Thus, when challenged by the court or the defendant in all cases originally commenced in a federal court, the plaintiff bears the initial burden of showing that it does not appear to a legal certainty that the claim for relief is for less than the statutorily prescribed jurisdictional amount; it must do so with competent proof. . . When the facts relating to the amount in controversy are in dispute, a significant number of other district courts utilize a preponderance of the evidence standard to determine whether the plaintiff has established original federal jurisdiction or the defendant has shown a basis for removal jurisdiction.

> Once the plaintiff establishes the facts by a preponderance of the evidence in an original action, the district court can apply the legal certainty test to determine the legal question of its jurisdiction. . .

(1961) ("The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.'"). In other words, whether the plaintiff makes his allegations in good faith is "but a linguistic variance" of the legal-certainty test. *Zunamon v. Brown,* *418 F.2d 883, 886,* n. 3 (8th Cir.1969) ("The first test for dismissal on jurisdictional grounds— whether the sum claimed by the plaintiff is made in good faith— should be seen as but a linguistic variance of the second— whether it appears to a legal certainty that plaintiff cannot recover the amount demanded. For, as one commentator has noted, 'unless it appears to a legal certainty that plaintiff cannot recover the sum for which he prays, how can it be held that his claim for that sum is not in good faith?'"); *Schubert supra* at:  649 F.3d 822.

The Eighth Circuit has long held that in a suit for declaratory or injunctive relief the amount in controversy is the value *to the plaintiff* of the right that is in issue.  *Usery v. Anadarko Petroleum* *Corp.*, 606 F.3d 1017, 1019, 175 Oil & Gas Rep. 153, 2010 WL 2244385 (8th Cir. 2010); *Federated* *Mut. Implement & Hardware Ins. Co. v. Steinheider*, 268 F.2d 734, 737–38 (8th Cir. 1959); *Advance Am. Servicing of Arkansas, Inc. v. McGinnis*, 526 F.3d 1170, 1173–74, 2008 WL 2151722 (8th Cir. 2008); *Federated Mut. Ins. Co. v. Moody Station & Grocery*, 821 F.3d 973, 977, 2016 WL 1729523 (8th Cir. 2016); *Schubert supra*;  *Vein Centers,* supra. This principle has sometimes been referred to as the "plaintiff's viewpoint rule." *Usery, supra.*  The value of the amount in controversy is assessed at the time of filing of an original action in federal court. *Scottsdale supra* at: 620 F.3d 931. "Subsequent events reducing the amount in controversy do not destroy diversity jurisdiction," but they may "be relevant to prove the existence or nonexistence of diversity jurisdiction at the time of filing." *Id*.

The plaintiff's viewpoint rule renders Noah's cost to comply with the injunctive and

declaratory relief requested irrelevant. *Usery, supra; Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 221–222, (11th Cir. 1997); *Mitchell v. GEICO*, 115 F. Supp. 2d 1322, 1328 (M.D. Ala. 2000) ("The court finds, as did the *Crawford*[15] court that Defendants' 'valuation is flawed.' 987 F. Supp. at 1415. Defendants' analysis focuses on the financial costs to Defendants in order to comply with the requested injunction, 'an approach which is not allowed by the Eleventh Circuit after *Ericsson*.' *Id*.").  Furthermore, the valuation of the relief sought is not how Plaintiffs subjectively value the relief they seek or even what Plaintiffs' good faith estimate of the objective value of the relief sought is.  *Usery, supra.* The question at hand is the *monetary* value to Plaintiffs of the injunctive and declaratory relief they seek on an objective basis. *Usery, supra*; *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2002) ("The value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted.").

The value to the Plaintiff of the injunctive and declaratory relief sought here cannot be determined *by speculation* regarding the potential value of a judgment in either party's favor, for speculative amounts and contingent losses are not properly included in the computation of the minimum amount in controversy for jurisdictional purposes.[16] See:  Wright & Miller, *Federal*

---

[15]*Crawford v. Am. Bankers Ins. Co. of Fla.*, 987 F. Supp. 1408 (M.D. Ala. 1997).  Footnote not in original.

[16]In *Anderson v. Wilco Life Ins. Co.,* No. CV 119-008, 2019 WL 2566516, at *3 (S.D. Ga. June 20, 2019), *rev'd and vacated*, 943 F.3d 917 (11th Cir. 2019) the Court collected cases demonstrating this principle in the context of challenges to the cost of insurance premiums:

See, e.g., *Friedman v. N.Y. Life Ins. Co.*, 410 F.3d 1350, 1358 (11th Cir. 2005) (finding the 'speculative nature of the value of any such benefit to plaintiffs' from their 'tagalong prayer for injunction' excluded it from the amount in controversy calculation); *Mann v. Unum Life Ins. Co. of Am*., 2012 WL 12897381, at *2 (M.D. Fla. 2013) (monetary value of injunction requiring premium rates to be consistent with state law was too speculative because 'the policies could terminate for any number of reasons'), *aff'd*, 505 Fed. Appx. 854 (11th Cir. 2013); *Lutz v. Protective Life Ins. Co*., 328 F.Supp.2d 1350, 1361 (S.D. Fla 2004)) (value of injunction in challenge to health insurance premiums immeasurable because the plaintiff could switch insurers or the defendant could terminate the policy, among other contingencies); *Mitchell v. GEICO*, 115 F. Supp. 2d 1322, 1327, 2000 WL 1514834 (M.D. Ala. 2000) (monetary benefit of injunction would materialize only if the plaintiff continued to maintain insurance through the defendant automobile insurer).

14

*Practice and Procedure*, 14AA Fed. Prac. & Proc. Juris. §3708 at page 1 of 37 and fn 4 at page 22 of 37 (4th ed.) ("There are cases, however, in which a federal court has concluded that the value of the requested injunction or declaratory relief is too uncertain or speculative to be considered in calculating the amount in  controversy. [Collecting cases at Footnote 4, a must-read footnote]."

See also the following additional cases:

*Roudachevski v. All-American Care Centers, Inc.*, NO: 4:11CV00230 SWW, 4-5 (E.D. Ark. Mar. 18, 2011)[17] ("The presence of the requisite jurisdictional amount is determined as of the time of removal, and it cannot be determined by speculation regarding the potential value of a judgment in either party's favor. *See New England Mortg. Sec. Co. v. Gay,* 145 U.S. 123, 130, 12 S. Ct. 815, 816 (1892). Speculative amounts and contingent losses are not properly included in the amount in controversy. *See Wabash Ry. Co. v. Vanlandingham,* 53 F.2d 51, 52 (8ᵗʰ Cir. 1931).");

*New England Mortg. Sec. Co. v. Gay*, 145 U.S. 123, 130, 12 S. Ct. 815, 816 (1892) (*holding*: when jurisdiction depends upon the amount in controversy, the amount in controversy is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment, however certain it may be that such loss will occur; and the collateral estoppel effect of a determination of usury in an action on 4 promissory notes which could be pleaded in a subsequent action by the debtor to avoid the deed given to the creditor as security did not increase the amount in controversy by the value of the land given as security.)

*Wabash Ry. Co. v. Vanlandingham*, 53 F.2d 51, 52 (8th Cir. 1931) (*holding*: Court had no jurisdiction over a suit for damages totaling less than the jurisdictional amount resulting from a

---

[17]Available at: https://casetext.com/case/roudachevski-v-all-american-care-centers-2.

breach of a contract that required the defendant railroad to maintain a ditch along its railroad adjoining plaintiffs' land.  The Court refused to include in the amount in controversy the future expense that the railroad would have on the contract, even though the collateral estoppel effect of the judgment for past damages would be to uphold the validity of the contract with respect to future expenses in an amount that when added to *past* damages would exceed the jurisdictional minimum. The *Vanlandingham* Court relied on *Gay, supra.*).

*Reilly Tar & Chemical Corp. v. Burlington Northern R. Co.*, 589 F. Supp. 275, 279 (D. Minn. 1988) ("The plaintiff must establish that the discovery relief which it seeks in the instant action [requesting an equitable bill of discovery to permit plaintiff's agents to enter upon and inspect certain land of defendant for use in another lawsuit to which plaintiff was a party] has a value which is ascertainable, measurable and greater than $10,000. The fact that equitable relief may not be capable of exact valuation will not negate federal jurisdiction. [Citation omitted]. However, if the matter in dispute is incapable of being reduced to a pecuniary standard of value, jurisdiction cannot be predicated upon 28 U.S.C. § 1332. [Bold added for emphasis]");[18]

*Advance Am. Servicing of Arkansas, Inc. v. McGinnis*, 526 F.3d 1170, 2008 WL 2151722 (8th Cir. 2008), *ovrld on other grounds*, *CMH Homes, Inc. v. Goodner*, 729 F.3d 832, 2013 WL 4749906 (8th Cir. 2013) ("While it may be true that an adverse finding could cast doubt on other Advance America contracts, future contingent losses not directly arising from its dispute with McGinnis

---

[18]The *Reilly Tar* Court based its conclusion on the following authorities:

> See *Senate Select Committee on Presidential Campaign Activities v. Nixon*, 366 F. Supp. 51, 60 (D.D.C.1973) (regarding the jurisdictional amount formerly required under 28 U.S.C. § 1331); 1 Moore's Federal Practice, ¶ 0.92(5). In the instant action, plaintiff has not demonstrated any method of calculating the monetary benefit of the discovery it seeks apart from its potential collateral impact on Civ. No. 4-80-469 [the separate proceeding that the discovery was to be used in]. The court cannot find any basis on which to assign a dollar value to the discovery sought in this action except by mere speculation and conjecture as to its impact on Civ. No. 4-80-469. Accordingly, the court finds no independent jurisdictional basis for the instant action under 28 U.S.C. § 1332.").

should not be considered in evaluating the amount in controversy between these two parties. See

*Wabash Ry. Co. v. Vanlandingham*, 53 F.2d 51, 52 (8th Cir. 1931)");

*Burns v. Massachusetts Mut. Life Ins. Co.,* 820 F.2d 246, 249 (8th Cir. 1987) (Eighth Circuit approved trial court's finding that the policy holder's claimed losses were highly speculative and not includable in the computation of the amount in controversy, noting that the insurer had neither a duty under the policy to pay dividends in any year, nor to pay those dividends in the manner, which the policy holder asserted);

*Ericsson, supra* at: 120 F.3d 221-222 (11th Cir. 1997) (*holding*: Any benefit that a disappointed bidder could receive from the injunctive relief awardable by the district court--namely, the chance to rebid for the contract - was too speculative[19] and immeasurable to satisfy the amount in controversy requirement; and because the disappointed bidder could not reduce the speculative benefit from a rebid to "a monetary standard,[] there is no pecuniary amount in controversy.");

*Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1269, (11th Cir. 2000) ("We think this obligation [to strictly construe the grant of diversity jurisdiction] requires a court to insure that the benefits resulting from an Injunction are not counted where they are so uncertain that the court cannot reasonably determine whether the amount of money placed in controversy by the present suit exceeds $75,000. Accordingly, a plaintiff who bases diversity jurisdiction on the value of injunctive relief must show that the benefit to be obtained from the injunction is 'sufficiently measurable and certain to satisfy the ... amount in controversy requirement ... .' *Ericsson* [supra], 120 F.3d at 221.");

*Mitchell supra* at: 115 F. Supp. 2d 1325–30 (In a suit to enjoin insurer "from using imitation parts, from eliminating procedures, materials and parts necessary to restore damaged vehicles using

---

[19]For the disappointed bidder in *Ericsson, supra* to benefit from an injunction setting aside the contract illegally awarded, the City would have to elect to submit the contract to rebidding, and the disappointed bidder would have to prevail at the rebidding.

property of like kind and quality," the monetary value of the requested injunction would only materialize if a Plaintiff continued to maintain insurance through GEICO and suffered damage to his automobile that required repair under the insurance policy, a hypothetical situation that the *GEICO* court found to be too conjectural for purposes of ascertaining a monetary value of the injunction as a whole);

*Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1071 (11th Cir. 2000)  (Injunctive relief of disclosing lower price of products offered in Office Depot stores than the price of the same goods offered via catalog would have no value to the class members, since members of the class would already have knowledge of the disparity in pricing through class action notices).

*Davis v. DCB Fin. Corp.*, 259 F. Supp. 2d 664, 677 (S.D. Ohio 2003) ("Whether inspection of the corporate records would lead in the future to any benefit to plaintiff . . . [was] 'too speculative and immeasurable to satisfy the amount in controversy requirement.'" (quoting *Ericsson, supra*);

*Morrison v. Favero*, No. 2:18-CV-0054-TOR, 2018 WL 4355196 (E.D. Wash. Sept. 12, 2018) (Injunction forbidding defendants from engaging in acts of animal cruelty, performing veterinary medicine without a license, performing scrotal ablation/castration procedures on any equine, and engaging in "the aforementioned deceptive and/or unfair practices related to the handling and sale of equine" would confer no pecuniary benefit on Plaintiff);

*Encore Energy, Inc. v. Morris Kentucky Wells, LLC,* No. 118CV00180GNSHBB, 2020 WL 353233, at *4 (W.D. Ky. Jan. 21, 2020) (Declaratory judgment action to prevent party from obtaining information seeks relief that is too speculative and immeasurable to satisfy amount in controversy requirement).

*Leonard  supra* at: 279 F.3d 973 ("Whether or not an injunction is granted in this case, the plaintiffs will be able to avoid paying for the insurance. Thus, the injunctive relief, unlike the compensatory

and punitive relief, will not be of any monetary value to the class members, and cannot be considered for amount in controversy purposes."); and

*McPhail v. Lyft, Inc.*, No. A-14-CA-829-LY, 2015 WL 1143098 (W.D. Tex. Mar. 13, 2015) ("Professors Wright and Miller have catalogued a number of cases where courts have declined to include the value of injunctions for such things as competing in the Olympics, or a determination of the parties' marital status, because to do so was too uncertain or speculative. [Citing §3708 of earlier version of Treatise].").

The value of the relief Plaintiffs seek here, whether Plaintiffs' claims are considered separate and distinct" or "common and undivided" for aggregation purposes, [20] is not sufficiently certain and measurable, as required by the many cases discussed in pages 14-19 above, to be included in the amount in controversy for purposes of determining diversity jurisdiction. Plaintiffs' requested injunction seeks implementation of procedures that Plaintiffs claim will reduce the *risk* of COVID-19 infection *among Noah's employees*. This will supposedly benefit Plaintiffs by reducing the *risk* that Plaintiffs will become infected with the COVID-19 Virus as a result of direct or indirect contact with Noah's workers, who become infected with COVID-19 at work. The

---

[20] In *Hedberg v. State Farm Mut. Auto. Ins. Co.*, 350 F.2d 924 (8th Cir. 1996) the Eighth Circuit explained the aggregation rule for determining the amount in controversy in a diversity case with multiple plaintiffs as follows:

> Where there are multiple Plaintiffs, as here, the standard [for aggregating Plaintiffs' claims in the determination of the amount in controversy] is that pronounced in *Troy Bank v. G. A. Whitehead & Co.*, 222 U.S. 39, 40-41, 32 S. Ct. 9, L. Ed. 81 (1911): "When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount."

We do not address here whether Plaintiffs' claims are such that each Plaintiff must prove his claim exceeds $75,000 or alternatively whether Plaintiffs must prove that their claims exceed $75,000 in the aggregate, since the value of the injunctive and declaratory relief sought is immeasurable, speculative, and not reducible to a pecuniary standard of value, as a matter of law, whether considered jointly or severally. *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 973, 2002 WL 69170 (11th Cir. 2002) ("If we determine that the monetary value of the injunctive relief to the class plaintiffs is "too speculative and immeasurable to satisfy the amount in controversy requirement" we need not even reach the question of whether such relief must be considered in the aggregate or pro rata. *Id. at 221-22*.").

pecuniary value of the COVID -19 safety procedures at issue to Plaintiffs is dependent upon the occurrence of the following attenuated chain of possibilities:

1)     A Noah's worker becomes infected with the COVID-19 Virus (the "infected worker") and has no symptoms that would require him to quarantine or preclude him from working;

2)     The infected worker passes the virus to one or more other Noah's workers at work (collectively the " additional infected workers ") notwithstanding the mask and distancing requirements imposed by Noah's;

3)     Plaintiffs and the additional infected workers fail to observe social distancing and face mask protective measures in their contacts with each other and the public;[21]

4)     One or more of the additional infected workers pass the virus either directly to Plaintiffs or to a member of the public, who directly or indirectly in turn passes the virus to the Plaintiffs;

5)     The source of Plaintiffs' future infection can be determined with reasonable certainty;

6)      Plaintiffs are not vaccinated for the virus and are susceptible to the virus, even though the Plaintiffs allege they have already been infected; ¶112, Complaint.

7)     Plaintiffs are not infected with the COVID-19 Virus from another source, assuming such an infection would inoculate Plaintiffs from future COVID-19 infection; and

8)     Noah's workers are not vaccinated for the virus, assuming vaccination will inhibit future transmission of the virus.

This chain of possibilities makes valuation of the injunctive relief sought highly speculative, for the risk to Plaintiffs' of COVID-19 infection allegedly traceable to Noah's and the benefit, if any, to Plaintiffs from the supposed reduced COVID-19 infection risk resulting from an injunction, only exist *if the above possibilities and assumptions occur*. The contingencies listed above make it

---

[21]In *Parker v. Wolf*, No. 20-CV-1601, 2020 WL 7295831 (M.D. Pa. Dec. 11, 2020) the Court determined that individual citizens lacked Article III standing to challenge a Contract Tracing Program and Mask Mandate as overbroad and unnecessary impingements on their constitutional rights.  The *Parker* Court concluded that the Plaintiffs failed to establish that future injury from the Contact Tracing Program was either "likely" or "certainly impending"  and that instead, "their theories of standing "rel[y] on a highly attenuated chain of possibilities" citing  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013).  One important fact buttressing the conclusion that Plaintiffs failed to establish that a future quarantine directive addressed to them was likely was that Plaintiffs all appeared to be following standard, recommended protocol for any reasonable citizen during a worldwide pandemic. See also: *Bechade v. Baker*, No. 20-11122, 2020 WL 5665554 (D. Mass. Sept. 23, 2020) cited by the *Parker* Court.

impossible to determine whether forced implementation of Plaintiffs' safety plan at Noah's Plant will benefit Plaintiffs in any way. The supposed value to Plaintiffs of their COVID-19 safety plan is too speculative,[22] contingent, and uncertain to be included in the calculation of the amount in controversy. Furthermore, the marginal value to Plaintiffs of the supposed reduced risk of infection, if the injunction is granted, is not certain, measurable, or reducible to a pecuniary standard of value because:

1)   Plaintiffs can fully protect themselves from any COVID-19 Virus allegedly traceable to Noah's by observing COVID-19 social distancing and mask protocols in their interactions with Noah's employees and members of the public and requiring all those with whom they come in contact to do the same, or alternatively by avoiding interaction with Noah's employees and members of the public until the pandemic is resolved or Plaintiffs are inoculated with the vaccine; These measures eliminate the entire risk of infection allegedly traceable to Noah's, thereby negating any value of, or need for, the requested injunction *from Plaintiffs' perspective.*

2)   The severity of the harm that Plaintiffs would sustain, if infected, is a matter of speculation at best, and in any event, will be avoidable upon Plaintiffs' inoculation with the vaccine;

3)   There is no allegation of any existing infection problem at Noah's Plant at the time the Complaint was filed, which eliminates any marginal value of Plaintiffs' safety plan as of the time the Complaint was filed;

4)   The COVID-19 Virus is ubiquitous, which results in Plaintiffs being at risk for the Virus from sources other than Noah's and possibly immune from the Virus once infected by a source not traceable to Noah's;

5)   Plaintiffs allege at ¶112 of the Complaint that they "have suffered physical harm associated with COVID-19 infection," which may possibly make them immune from the Virus;

---

[22] Plaintiffs' risk of contracting the COVID-19 Virus from a source allegedly traceable to Noah's is a speculative injury because the feared infection is neither likely nor certainly impending in view of the above chain of possibilities. *West v. Azar,* No. 1:20-CV-1726-RCL, 2020 WL 7646741 (D.D.C. Dec. 23, 2020) ("Mr. West cannot demonstrate a particularized injury from his risk of COVID-19 infection as an older person; he shares that characteristic with every person in this country over the age of 55. Additionally, the risk that he will contract COVID-19 is a speculative injury; it is not certainly impending."); *Archer v. Carnival Corporation,* 2:20-cv-04303, 2020 WL 7314847 (C.D. Calif. 2020) (Plaintiffs lacked standing to pursue injunction against cruise line to implement COVID-19 precautions because Plaintiffs' threat of future harm was neither "certain," nor were the injuries "actual and imminent"—they are purely conjectural).

6)     The transmission of the virus to Plaintiffs, which Plaintiffs' safety plan is intended to prevent, will be the proximate result of the acts and omissions of third parties comprised of hypothetical additional infected workers and members of the public, who were infected with the COVID-19 Virus by hypothetical additional infected workers (collectively "Third Parties"),  who are not before the Court.[23]   These Third Parties can eliminate the risk of the spread of the Virus to Plaintiffs by observing COVID-19 social distancing and mask wearing protocols, when they are in contact with Plaintiffs,  thereby eliminating the risk of transmission of  COVID-19 infection from a source traceable to Noah's and the value of, or need for, Plaintiffs' safety plan.

In these circumstances, the supposed value of the reduction in infection risk to Plaintiffs, if the injunction is granted, is not includible in the calculation of the amount in controversy under the uniform rule embraced in the authorities discussed in pages 14-19 above. Those authorities preclude including the value of a speculative or immeasurable  injunction or declaratory judgment benefit  in the amount in controversy for purposes of determining diversity jurisdiction.

The uncertain, immeasurable, and speculative nature of the supposed benefit of the requested injunction, if any, creates an insurmountable obstacle to Plaintiffs' contention that the amount in controversy exceeds $75,000. These impediments cannot be cured in an amended complaint because Plaintiffs cannot make a supposed benefit  that is uncertain, immeasurable and speculative into a certain, measurable and non-speculative benefit.  In other words, Plaintiffs cannot make something out of nothing in an amended pleading.  The Complaint should be dismissed without leave to amend.

## CONCLUSION

Plaintiffs' Complaint asserts no claim that creates federal-question jurisdiction.  There is no diversity of citizenship jurisdiction here because the amount in controversy, whether determined in

---

[23]Because Plaintiffs' threatened harm is attributable to the act and omissions of third parties not before the Court, Plaintiffs cannot prove their threatened injury is traceable to Noah's and accordingly lack standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016).   This same fact eliminates Plaintiffs' ability to prove the value  required for diversity jurisdiction.

the aggregate for all Plaintiffs or separately for each Plaintiff, does not exceed $75,000 exclusive of interest and costs; and the Complaint fails to allege Plaintiffs' citizenship.

Pendent jurisdiction does not exist because this Court never had original jurisdiction. Even if pendent jurisdiction existed, it would be improper for this Court to retain the state claims under the pendent jurisdiction statute because all federal claims have been dismissed and comity concerns require the state law claims be tried by a state court.

This Court should dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction without leave to amend, for any amendment would be futile. This Court has no subject matter competence to take any other action.

Dated February 11, 2021.          NOAH'S ARK PROCESSORS, LLC, Defendant

By: s/ *W. Patrick Betterman*

W. Patrick Betterman, 10306
W. Patrick Betterman P.C., L.L.O.
3628 N. 163rd Plz.
Omaha, NE 68116
(402) 333-3334 (voice)
(402) 552-8808 (facsimile)
pat@betterlaw.com
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of NECivR 7.1(d) because it contains 9,484 words. The undersigned further certifies that he relied on the Microsoft Word count function (Microsoft Word for Microsoft 365 MSO (16.0.13426.20352) 64-bit), which included all text including the caption, headings, footnotes, and quotations.

s/ *W. Patrick Betterman*

W. Patrick Betterman, 10306

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 11, 2021, the undersigned electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the Plaintiffs' attorneys of record including. In addition, on February 11, 2021, the undersigned sent via email a copy of the foregoing to the following attorneys for Plaintiffs:

Adam Sipple (SBN 20557) - ajsipple@aclunebraska.org;
Rose Godinez (SBN 25925) - rgodinez@aclunebraska.org;
Maren Lynn Chaloupka (SBN 20864) - mlc@chaloupkalaw.net;
Spencer Amdur - samdur@aclu.org;
Julie Veroff - jveroff@aclu.org;
Lee Gelernt - lgelernt@aclu.org; and
Noor Zafar - nzafar@aclu.org.

/s/ *W. Patrick Betterman*
W. Patrick Betterman, 10306